# Appeal of Criswell et al.

1. Where a building association is authorized by its charter to receive money on deposit from its stock-holders, to bear interest at a certain rate, in case of insolvency, such stock-holders are creditors of the association as to their deposits, and in the payment of them are entitled to a pro rata share of the assets of the association with other outside creditors, in preference to the stock-holders.

2. If the association, without authority from its charter or by-laws, has received similar deposits from persons who are not stock-holders, such depositors are also creditors of the association, and in case of its insolvency, are entitled to share pari passu with the stock-holding depositors.

3. Upon the insolvency of a building association and an assignment for the benefit of creditors, the holders of matured stock are not creditors, and can only share pro rata with the holders of unmatured stock, after the payment of the creditors of the corporation.

4. The order prescribed by the by-laws of a building association for the payment of money out of its treasury to the different classes of members in the regular course of the business of the association, does not apply to the distribution of its assets when insolvent.

May 4th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Union county :* Of July Term 1882, No. 28.

Appeal of James Criswell et al. from the decree of said court upon exceptions to the report of the auditor appointed to distribute the funds in the hands of the assignee for the benefit of creditors of the Lewisburg Building Association.

Before the auditor the following facts appeared :—The Lewisburg Building Association was incorporated by the act of April 21st 1858, P. L. 487, and a supplement to the charter passed March 29th 1859, P. L. 291. By the act of April 29th 1874 the association was rechartered but no new business was transacted after that date. On November 5th 1879 the asso-

·ciation made an assignment to Wm. L. Nesbitt, for the benefit ·of its creditors, and on February 7th 1880 the assignee filed a partial account, which was afterward confirmed, showing a ·balance of $2,661.03 in his hands.

The claimants for this fund were as follows :—

I. Depositors—of whom there were two classes : 1. Depositors who were not stock-holders. 2. Depositors who were stock-holders.

II. Holders of matured stock—of whom there were three classes : 1. Holders of stock regarded by the Association as actually matured in regular course, including all the stock in series 1 to 30 inclusive. 2. Holders of stock reported as matured, but the maturing of which was afterward disputed, including series No. 31 to No. 34, inclusive. 3. Cash matured stock, for which . cash had been paid in advance.

III. Holders of unmatured stock—of whom there were two classes : 1. Those who had withdrawn their stock. 2. Those · who had not withdrawn their stock.

The Association had issued 44 series of stock. Of these 34 series had been marked as matured on the books of the Association, and much of the stock either paid or applied in liquidation of loans. Most of the stock of series 34 had been borrowed out, and none of the unincumbered stock of that series had been paid.

The total amount of claims was $101,947.90, including deposits of non-stock-holders $12,508.59 and of stock-holders . amounting to $15,367.94.

Under certain provisions of the charter and by-laws the stock-holders were allowed to deposit money with the association which could be withdrawn at any regular meeting. The association accordingly received numerous deposits from stock-holders to bear interest at one-half per cent. a month, and also received deposits from non-stock-holders, although without authority from its charter or by-laws.

Article VII., section 5 of the by-laws provided as follows :

If at any time there shall not be enough money in the treasury to meet all demands, preference shall be given in the following order : 1st. Interest on deposits and dividends on ·matured stock. 2d. Expenses. 3d. Deposits, in the order of application. 4th. Withdrawals of matured stock in the order of application. 5th. Withdrawals of other stock in the order of application. 6th. Money claimed by members who have · paid back their loans and wish to resume them.

Before the auditor the non-stockholding depositors claimed · to be first paid, as creditors of the Association. · The stockholding depositors also claimed to be creditors as to their . deposits, and the withdrawing stock-holders claimed to be

creditors, since the charter provided that they should be permitted to withdraw, whether their stock was mature or immature; and previous to the assignment those whose stock had not matured had given notice of withdrawal. The other claimants of the fund contended that it should be distributed pro rata among all classes.

The auditor, after dividing the claimants in three classes as above—(1) Depositors, (2) Holders of matured stock, (3) Holders of unmatured stock—and considering their relative positions under the constitution and by-laws, reported *inter alia* as follows: "It is manifest that if any of the three classes we have been considering is a preferred class, the fund will be absorbed by such class long before the full payment of such class shall be effected. The vital question then is: Are depositors entitled to priority of payment over holders of matured and unmatured stock? . . .

"Without regard, however, to the relative situation of the holders of matured and unmatured stock toward each other, it will be enough for the purposes of the present distribution if the depositors are found to hold the position of creditors of the Building Association, while the stock-holders of both classes hold that of members.

"What is a building association? This question is answered by Judge Sharswood, in his opinion in Becket *v.* Uniontown Building Association, 7 Norris 216, where he says 'it is a species of partnership for dealing in money.'

"Speaking of the borrower (and it would be fully as true of the non-borrower), he says 'he became a member of the association in view of the large profits expected to accrue from heavy discounts to the common fund.'

"Now, the depositor is not one of this partnership, he does not receive a dividend or share of the profits, nor is he called upon to pay any proportion of the expenses or losses. He is, in fact, a lender of money to the Association, and whether the Association makes or loses, whether fortunate or unfortunate in its business, the depositor is to receive his money and a fixed rate of interest upon it, which can in no event be more than six per centum per annum, and which may be placed by action of the directors at even a lower rate than that.

"The depositor, as such, has nothing to say in regard to the management of the business of the Association. If he should have, it is because he is generally a stock-holder, and then it is by virtue of his representing shares and not deposits. . . . . The holder of matured stock still holds his interest in the Association as stock. He participates in the management of the affairs of the corporation, having the same rights and privileges as other stock-holders. See Article I. of By-Laws, section 3. . . . . And the owner of matured stock is entitled

to dividends to be paid to him out of the profits. The auditor is of the opinion that the depositor holds the position of a creditor of the Association, pure and simple, while the holder of matured stock has the somewhat anomalous position of creditor and shareholder combined, but the interest which he has in the corporation bears enough of the impress of stock, and savors enough of the co-partnership, to subordinate him to the rights of the depositor.

"As before stated, the class of depositors is made up of two divisions—stock-holders who are depositors, and strangers to the corporation or non-stockholders who are depositors. It is contended on the part of the latter that in this distribution they have priority over the depositing stock-holders, while some of the stock-holders, who are depositors, claim that the non-stockholders have no right even to share in the distribution, as there was no provision in the charter allowing deposits to be taken from any except stock-holders, and that it was 'ultra vires' for the officers of the corporation to accept such deposits. . . . Even if they had not the power under the charter to receive these last mentioned deposits, the officers of the corporation did receive them. The money passed into the coffers of the Building Association, and inured to the benefit of its members in all its different lines of business. It would be highly inequitable not to refund this money, and the auditor is of opinion that it must be paid to such depositors. But have these depositors any preference over the depositing stock-holders? . . . . The auditor cannot see that the non-stockholder has any prevailing equity, for when he came to deposit his money he came in the garb of a stock-holder, (the charter and by-laws being silent as to others than stock-holders being depositors.)

"He voluntarily assumed the position of a stock-holder depositor, as far as it was applicable to him, and became as to his deposit subject to the constitution and by-laws of the Building Association. If the Building Association, by reason of equity, is to take no advantage of the non-stock-holder who makes makes the deposit, neither should such a depositor be allowed to take advantage and have priority over those among whom he has placed himself by his own voluntary act. He became a quasi stock-holder in the beginning of the transaction, and must sustain that character to the end.

"In the opinion, therefore, of the auditor, all the depositors should fare alike and be entitled to the same pro rata."

The auditor, therefore, preferred the claims of the depositors, which, with interest and costs, were sufficient to exhaust the fund for distribution.

Exceptions were filed to this report by the holders of unma-

tured stock: (1) Because the fund was not distributed pro rata among all claimants; (2) because the stock-holders, who were also depositors, were allowed a preference as to their deposit; the depositors who were not stock-holders excepted because they were not made preferred creditors above all claimants.

The court sustained the exceptions of the unmatured stock-holders, holding that the preferences as to payment, indicated by the charter and by-laws, did not apply to the Association when insolvent; but that, in view of the insolvency, the depositors of both classes, the holders of matured stock, and the holders of unmatured stock, were all creditors of the Association, standing on the same footing; and the court therefore decreed that the fund in the hands of the assignee be distributed pro rata among the said claimants. The matter was referred back to the auditor, who made a report in accordance with this decree, which report was confirmed by the court, whereupon the depositors and holders of matured stock took this appeal, assigning for error the decree of the court.

*Wolfe* and *Wilson*, for the appellants.—The depositors are merely creditors of the Association, who receive a certain interest on their loans to the corporation, which appropriates to itself all profits made with the depositor's money. The holder of matured stock is not, in this sense, a lender, but by paying dues a stockholder acquires an interest in the Association in the form of stock, his return being a share of the profits of the enterprise, and he therefore becomes liable to a share of its losses. The depositor's money becomes no part of the capital stock, and the fact of his being also a stock-holder, cannot make him, as to his deposit, anything but a lender. The same person may be both a stock-holder and a creditor of an association. Ins. Co. *v.* Connor, 5 Harris 136; Gordon *v.* Preston, 1 Watts 388.

As between the holders of matured and unmatured stock, the former are creditors of the association (Building Association *v.* Silverman, 4 Norris 397) and are clearly entitled to priority of payment. But if it should be held: (1) that the depositors alone of all claimants are creditors of the association, the fund in the hands of the assignees, must be first applied to the payment of their claims, or (2) that the depositors are not creditors, then no class of claimants can be, and the fund should be distributed as provided in the charter and by-laws; or (3) that depositors and holders of matured and of withdrawn stock are all creditors—then the fund should be distributed between them according to the priorities indicated by the charter and by-laws; because of the express contract which the different classes of claimants have entered into in their dealing with the association. The assignee took the assigned estate subject to the equities and

trusts attached to it in the hands of the assignor: Rossiter's Appeal, 2 Barr 371 ; Garrison's Appeal, 2 Grant's Cas. 216.

*Dill* and *Beale* for the appellees.—The taking of money on deposit from persons not stock-holders, was an act clearly beyond the power of the corporation, and the rights of the parties holding such claims should be adjudicated with reference to the situation in which they have placed themselves.

If these claims are referred to the same class as the depositing stock-holders, as if they were entitled to be so regarded under the charter, it is all that can be justly asked for them. The privilege granted to stock-holders of making deposits with the Association, enhanced the value of their stock, since the profits of the money deposited are divided among the stock-holders, and thus increase their interest in the common venture.

As between the holders of the matured and unmatured stock there can be no difference. The holders are entitled to be paid in cash at certain fixed rates upon maturity, or upon giving proper notice of withdrawal. Matured and unmatured stock-holders and depositors are alike money claimants against the Association, whose claims are equal in all respects.

Mr. Justice STERRETT delivered the opinion of the court October 2d 1882.

The Lewisburg Building Association was incorporated by act of April 21st 1858, P. L. 487, to which was afterward added the supplement of March 29th 1859, P. L. 291. At the expiration of twenty years the Association was re-chartered under the provisions of the act of April 29th 1874, but no new business was done thereafter. The object of the re-charter appears to have been to enable the Association to wind up its affairs. In pursuance of a resolution previously adopted, a general assignment for the benefit of creditors was executed in November 1879. In 1880, the assignee filed a partial account showing a balance of $2661.03 in his hands. The claimants on the fund who appeared before the auditor may be conveniently classified as follows, to wit:

1st. Depositors, who may be subdivided as follows: (A) Those who were not stock-holders; and (B) those who were stock-holders.

2nd. Holders of matured stock, consisting of (A) Holders of stock regarded by the Association as actually matured in regular course, including all the stock of series Nos. 1 to 30 inclusive; (B) Holders of stock reported as matured, but the maturing of which was afterward disputed, including series Nos. 31 to 34 inclusive; and (C) Cash matured stock, for which payment was made in advance.

3rd. Holders of unmatured stock consisting of (A) Those who had withdrawn their stock; (B) Those who had not withdrawn their stock.

The Association had issued in all forty-four series of stock, of which the first thirty-four had been marked on its books as matured, and much of it either paid out or applied in liquidation of loans. Nearly all the stock of series No. 34 had been borrowed out and none of the unincumbered stock of that series had been paid.

The different classes aggregated $101,947.90, including deposits of non-stockholders, $12,508.59, and deposits of stockholders, $15,367.94.

It was claimed by the depositors who were not stock-holders that they alone, of all the different classes of claimants, were creditors of the insolvent corporation, and therefore entitled to the whole fund.

The stock-holding depositors claimed that they as well as those who owned no stock were, as to their deposits, creditors, and as such entitled to a prior claim on the fund.

Some of the withdrawing stock-holders claimed that they alone were creditors, and therefore entitled to priority. It was contended by other claimants that the fund should be distributed pro rata among all classes.

The auditor held that depositors of both classes were alike creditors, and he accordingly awarded the fund to them; but the court came to a different conclusion, and distributed the fund pro rata among all the claimants.

The principal question presented by the assignments of error is, whether depositors of either or both classes are properly creditors of the Association, and as such entitled to priority.

The fifth section of the charter provides that "Stock-holders may deposit money from time to time under such regulations as shall be prescribed in the by-laws. The interest on such deposits shall not exceed six per centum per annum."

The first section of Article XI. of the by-laws declares that "Stock-holders may deposit money in the Association, which shall bear interest at a half per cent. per month, and can be withdrawn at any regular meeting." These provisions evidently contemplated that stock-holders, and they alone, should be entitled to make interest-bearing deposits; but in fact the Association received deposits from strangers as well as from its own members. The money thus received passed into the treasury of the Association, and was used in its business. Members of the Association who enjoyed the benefit of these deposits cannot be permitted to say that those from whom the money was received are not creditors of the Association. To permit them to do so would be grossly inequitable and unjust.

[Sunbury Fire Ins. Co. v. Humble.]

The stock-holding depositors, also, as to their deposits, occupy the relation of creditors to the Association.   They, as well as non-stockholding depositors, are in fact lenders of money to the Association, and whether it makes or loses they are entitled to receive their money with the interest thereon at the rate established by the charter and by-laws.   As depositors they have no right to participate in the management of the Association. That right springs from their relation to the Association as stockholders alone.   The two-fold relation of corporator and creditor of the corporation is by no means unknown to the law : Gordon v. Preston, 1 Watts 385 ; Insurance Co. v. Connor, 5 Harris 136.   It is said in the former case, " That a corporator may sustain the relation of debtor or creditor in regard to the corporation, and in the latter capacity receive a security, is a proposition that requires not the aid of argument."   The provision in the charter which authorizes stock-holders to deposit money and receive interest thereon, establishes between them and the corporation the relation of debtor and creditor as to such deposits.   The conclusions of the learned auditor, as to both classes of depositors, are so fully vindicated in his report that nothing further need be said on that subject.   The fund should have been distributed pro rata among both classes of depositors.

As to the other classes of claimants, in case the fund had been sufficient to reach them, we think the learned judge of the Common Pleas was right.   In marshalling the assets of the insolvent corporation, neither of these classes is entitled to priority over any of the others.

Decree reversed at the cost of the appellees ; and it is now adjudged and decreed that the fund be distributed in accordance with the first report of the auditor.