# Johnson *v.* National Building & Loan Association.

125   465
f126  679
125   465
131   255

125   465
e140  376
140   377

*Bill in Equity to avoid Contract with Building and Loan Association, and to have Payment of Dues, Interest and Premiums Applied to Mortgage Debt.*

1. *Building and loan association; authority under general power to issue paid up stock.*—A building and loan association, organized under the general laws of this State, authorizing the incorporation of such institutions, has authority, under its general powers, to enact by-laws providing for the sale and

30

[Johnson v. National Building & Loan Association.]

issuance of paid up stock, although there is no express legis-
lative grant of such power.

2. *Same; loan by such company not usurious.*—The lending of.
money by building and loan associations organized under the
general laws of this State, on such. terms as are prescribed
by their by-laws and in accordance with the statute relating·
thereto, is not restricted by the statute regulating the rate of
interest generally, and such contracts are not void for usury.

3. *Same; right of stockholder to file bill against association to re-
dress alleged corporate wrongs.*—A stockholder in a building,
and loan association complaining of undue advantage given by
the association to holders of paid up stock, can not maintain
a bill in equity against the corporation to redress the alleged
corporate wrongs, until he has done all things in his power·
to obtain, within the corporation, redress for the wrongs com-
plained of; and a bill filed for such purpose which fails to
allege an effort on the complainant's part to have the wrongs
redressed within the corporation, or else which shows a satis-
factory reason for its failure to do so, can not be maintained
and is subject to demurrer.

4. *Same; same; estoppel.*—Where paid up stock is regularly issued
by a building and loan association in accordance with its
by-laws, one who, with knowledge of such by-laws and of the·
issuance of such stock, becomes a member of said associa-
tion for the purpose of borrowing from it and does secure a
loan, he can not, subsequently, come into a court of equity for·
the purpose of avoiding the payment of his debt by having
his contract in the association annulled on account of alleged
corporate wrongs in the issuance of paid up stock, by which,
it is averred, the holders of such paid up stock are given an
advantage over the other stockholders of the association.

5. *Same; insufficient averments in bill to cancel mortgage for·
fraud.*—The averments in a bill filed by a borrower from a
building and loan association, for the purpose of having his·
contract rescinded and the mortgage cancelled, that the asso-
ciation falsely and fraudulently represented that the stock
subscribed for by the complainant would mature in seventy-
two months at the outside, and that by reason of such repre-
sentations the complainant was induced to invest in its stock
and borrow a designated sum of money, is insufficient to·
show fraud on the part of the defendant association, author-
izing the relief prayed for; such representation being the mere·
expression of an opinion·on the subject, which was equally
open to investigation by both parties.

6. *Same; equity jurisdiction; right to an accounting.*—In a bill filed
by a borrowing stockholder against a building and loan asso-
ciation to have his contract rescinded and the mortgage can-
celled, where there is no dispute as to the amount of the
loan or as to the payments made by the complainant either in
his character as borrower or stockholder, and it is not averred
that there has ever been a demand and refusal for an ac-
counting, the complainant is not entitled to maintain a bill
for the purpose of an accounting.

APPEAL from the City Court of Gadsden in Equity.
Heard before the Hon. JOHN. H. DISQUE.

The bill in this case was filed by the appellant
against the appellee; and as amended it was averred in
the bill that the National Building & Loan Association
was a coropration arganized under the laws of the State
of Alabama; "that the object of respondent corporation
is to enable its members to accumulate in an easy man-
ner by monthly contributions or assessments the neces-
sary capital for acquiring a homestead, to establish
themselves in business, or to deposit their savings se-
curely, and at a fair rate of interest." After averring
certain provisions of the by-laws, which are made exhib-
its to the bill, the bill then contained the following aver-
ments: "That paid-up stock may be issued and sold at
the price of twenty-five dollars per share. A divi-
dend of seventy-five cents per share may be paid
semi-annually on such stock, which dividend shall
be deducted from the profits apportioned to such
share. There may be used for expenses on such
stock one and 75-100 dollars per share the first
year, and seventy-five cents per year per share there-
after. Paid-up stock cannot be withdrawn until after
six months from date of issue, and if withdrawn before
maturity, shall entitle the holder to receive twenty-five
dollars per share. Paid-up stock which shall have been
in force one year or more may be withdrawn and a
profit at the rate of two per cent. per annum will be
allowed. Holders of paid-up stock can never be assessed
or called upon for any payments other than the twenty-
five dollars per share, for which such stock is sold.

"That the receipts are divided into a loan and expense

fund.   The expense fund consists of all admission, transfer, insurance, abstract and attorney's fees; amounts paid for insurance or taxes on property on which loans have been made; fees, costs and disbursements of foreclosure, together with five cents per share per month from the monthly payments on stock.  'The loan fund consists of all receipts which do not go to the expense fund as above set out, and no part of the loan fund can be used for expenses except taxes.

"That in case the funds subject to loan are not called for by any member entitled thereto within ninety days after the same has been offered for bids, in case they are not otherwise disposed of, if the board of directors deem for the best interest of said association, they may invest the same in real estate security for the mutual benefit of the members, and that on the first days of the months of January and July in each year, all undivided profits shall be apportioned and credited to the shares in force.

"That a member desiring a loan shall file a written application therefor with the secretary, accompanied by a bid stating the amount of the premium per share, in addition to six per cent. interest, which the applicant is willing to pay for such loan.  But no loan shall be granted to a member until three months from the date of his certificate of stock, unless the board of directors shall, for good reasons, determine the contrary."

It was further averred that on April 18, 1892, the complainant subscribed for 200 shares of the capital stock of the defendant corporation and made application for a loan on the same day of the subscription; that on May 7, 1892, the loan was made and the defendant entered into a contract evidencing the same and executed to the defendant a mortgage for $10,000 on certain real estate, of which he was seized and possessed, and which was situated in Gadsden, Etowah county, Alabama. That upon the execution of the contract and mortgage, the complainant received $9,615.90, the balance having been deducted as payment of dues, interest and premium for the month of June, 1892, and the expenses of making the loan, the complainant having paid $100 as an admission fee upon subscribing for the stock.  That the

true consideration of said mortgage was that the "complainant was to pay the corporation monthly, the sum of $190 per month for sixty-five months, and at the outside limit he was to pay only seventy-two months; * * * that the corporation falsely and fraudulently made such representations to induce your orator to borrow money from said corporation, and that by reason of said false and fraudulent representations your orator was induced to and did borrow money and execute said mortgage." It was then averred that the complainant had paid to the defendant $190 per month for seventy-two months, making in the aggregate, $13,780, which the complainant avers fully paid off said mortgage.

Continuing, the bill then avers: "That said respondent corporation has issued more than six thousand shares of paid-up stock of the face value of fifty dollars per share and sold the same at twenty-five dollars per share, and pays the holder semi-annually six per cent. guaranteed, and it is not liable for assessments in case of loss. And that by reason of the issuance of said paid-up stock said corporation was put to large expense and had a large surplus on hand, upon which it was paying interest, and that in order to reduce its large surplus it loaned its money in other States, and thereby subjecting the profits, earnings and its principal to the usury laws of other States, and thereby making the borrowers of this State pay the losses, and paid-up stock not being liable for same, but is a preferred claim against said corporation; and that said respondent corporation has paid out to paid-up stockholders a large amount as dividends, being the six per cent they are required to pay on the paid-up stock; but orator does not know how large the amount that has been paid on said paid-up stock, but the report of the president of said corporation on September 30th, 1896, then showed that the large sum of $28,683.61 had then been paid by the said corporation as dividends on its paid-up stock, and orator charges that said corporation has since that time paid large sums to paid-up stockholders, thereby withdrawing from the funds of said corporation and reducing the capacity and ability of said corporation to make the earn-

ings larger and preventing all stockholders sharing alike in the mutual undertaking.

"That although orator has paid said repsondent corporation the large sum of thirteen thousand seven hundred and eighty dollars for and on account of said loan and mortgage, the said National Building & Loan Association, at the time of the filing of the original bill in this case, was advertising said above described property under the power in said mortgage, to sell on the 15th day of June, 1899, and claims that orator owes the said corporation the further sum of ten thousand dollars, and orator avers and charges that the same has been fully paid.

"That said real estate is worth twenty thousand dollars, largely more than the amount claimed by said National Building and Loan Association, and that the books of said corporation are in the possession of said corporation or its agents, and orator does not and can not know the amount of accrued dividends during the many years that he has held stock in said corporation; and that upon said above described lands are situated four storehouses and a hotel, and that orator occupies one of said storehouses in carrying on the business of wholesale and retail family groceries, and that all the other houses situated on said lands are rented out under contracts and leases, and that a sale would interfere with orator in carrying on his business and would terminate all leases on the balance of said houses."

The prayer of the amended bill was as follows: "The premises considered, your orator prays that the National Building & Loan Association be made a party respondent to the amended bill of complaint, and that process issue, as required by law and the regulations of your honor's court, and that the indebtedness of orator to said National Building & Loan Association be ascertained, and that orator submits himself to the jurisdiction of this honorable court, and avers that he is able, willing and ready to pay whatever amount that may be ascertained to be due to said National Building & Loan Association by your orator, and pending this suit, that the injunction heretofore granted be retained,

and reinstated during the litigation of this amended bill.

"And that upon final hearing, may it please your honor to grant orator general relief; and upon payment of any amount that your honor may find to be due to said National Building & Loan Association by your orator, or if nothing be found due by your orator, then in either event, that said injunction be made perpetual and said mortgage cancelled, and such other and furthere relief as equity, justice and good conscience may require. And as in duty bound, orator will ever pray, etc."

The mortgage and the contract of loan were made exhibits to the bill and were such as are usually given to building and loan associations to secure the payment of money borrowed from them.

Upon the filing of the original bill and the giving of the bond as required, an injunction was issued. The defendants moved to dismiss the bill as amended for the want of equity, and also moved to dissolve the injunction on the ground that the said bill as amended does not contain equity. The defendant also demurred to the bill, assigning many grounds of demurrer which may be summarized as follows: 1. The bill does not show that the debt secured by such mortgage has been paid. 2. The bill does not show that complainant has complied with its contract. 3. The bill does not show that the complainant's stock has matured, and hence, fails to show that any part of the principal of said debt has been paid. 4. The bill does not show that the payments made by complainant as dues, interest and premiums, constitute payments on the loan evidenced by said mortgage. 5. The complainant seeks to have the several amounts paid by himself as dues, interest and premiums, credited on the principal and interest of his loans, in violation of his contract obligations. 6. It appears from the bill that the loan to complainant was made by respondent association in accordance with its by-laws. 7. The averments of said bill as to the time when complainant's stock in the respondent corporation should mature show only the expression of an opinion, or a

judgment, upon a matter that was equally open to both parties, and do not amount to a charge of fraud or misrepresentation on the part of the defendant association. 8. The allegations of said bill with respect to paid-up stock furnish no ground of relief to complainant. The issuance of said paid-up stock was not unlawful, but was authorized by law and was in accordance with the by-laws of the respondent association. 9. Complainant seeks to attack the validity of the paid-up stock issued by the respondent association, without showing wherein he has been damaged by the issuance of said stock. 10. Complainant seeks to attack the validity of said paid-up stock, and at the same time seeks to share in the profits arising from the use and employment of money which the purchasers of said paid-up stock paid therefor. 11. Complainant is without right to attack the validity of said paid-up stock. 12. Said bill does not show that the respondent association has failed or refused to state an account between it and the complainant. 13. Said bill does not state any facts showing how or wherein any usury exists or was charged or used in the advancement of the stock owned by complainant in the respondent corporation or in the contract securing said loan. 14. Said bill fails to show any authority or right on the part of complainant to invoke the aid of a court of equity in the restraint or exercise by the respondent of the power of sale conferred by said mortgage. 15. Said bill fails to show wherein said contract was *ultra vires*. 16. Said bill shows that the complainant is estopped from attacking said contract as *ultra vires*.

Upon the submission of the cause upon the motions and demurrers, the chancellor overruled the motion to dismiss and the motion to dissolve the injunction, and sustained the demurrers to the bill. The complainant appeals from the decree thus rendered and assigns as error the sustaining of the demurrers to the bill as amended. The respondent makes cross-assignments of error as to that portion of the decree which overruled the motion to dismiss the bill for want of equity and to dissolve the injunction.

GEORGE D. MOTLEY, for appellant.—The issuance by the defendant building and loan association of paid-up stock was the exercise of power not granted to it under the statutes of the State, and was also in violation of the constitution of the State. A subscription for stock with the understanding that the corporation shall issue stock of a greater face value than the amount of money paid, or the reasonable value of the property furnished. is violative of § 6, Art. 14 of the Constitution.—*Williams v. Evans* ,87 Ala. 725; *Ala. Nat. Bank v. Halsey*, 109 Ala. 196. Building and loan associations have no inherent authority to issue paid-up stock; the issuance of such stock being contrary to the purposes for which such corporations are organized.—*Rhodes v. Mo. S. & L. Co.*, 173 Ill. 621; *Mcroney v. Atlanta Nat. B. & L. Ass'n*, 47 Am. St. Rep. 841. A guaranty of a corporation to pay to any member absolutely a certain small annual sum out of the general fund, as his dividend or interest. upon capital invested in the stock of the association would be repugnant to a mutual plan, and unless intended as a loan of money, the payment of such a dividend or interest could not be enforced. An unconditional agreement, one not based on the contingency of surplus or profits, to pay a sum certain at stated periods as dividends upon stock is not compatible with the idea of equality or mutuality.—*Dickinson v. Continental Trust Company*, 52 N. Y. Sup. 672; Endlich on Building and Loan Associations, § 464. An association is bound to treat its members equally, and any contract in contravention of the mutuality of the company is *ultra vires* and void, and all contracts to the effect that after payment of a certain sum, less than the face value, stock shall be considered fully paid, are *ultra vires* and void.— Thompson B. & L. Ass'n, § 314.

The bill charged that said respondent semi-annually declares dividends. The declaring of dividends at intervals is a feature of a building and loan association which required statutory authority, as to participation in the profits, the scheme has reference to a final accounting, and not to any immediate adjustment.—*State v. Oberlin B. & L. Ass'n.* 35 O. St. 258; Thompson B. & L.

Ass'n. § 239; Endlich on B. & L. Ass'n. § 327; Thornton & Blackledge on B. & L. Ass'n. § 181.

It may be broadly stated that transactions not authorized by a statute or rules, and not incidental to the conduct of a building association's business are void. In treating of the power of building associations to contract, it may well been said that it is confined to such objects as are fairly within the scope of the business contemplated by their charters as the proper and legitimate purpose of their creation, or necessary in order to its effectual accomplishment. What this purpose is, has already been shown. To all practical intents, it may be said to be to enable a number of associates to combine and invest their savings to mutual advantage, so that from time to time any individual among them may receive out of the accumulation of the pittances which each contributes periodically, a sum by way of loan, wherewith to buy or build a house, mortgaging it to the association as security for the money borrowed, and ultimately making it absolutely his own by paying off the incumbrance out of his subscriptions. It is only so far as they serve these purposes and are confined to the objects legitimately involved therein, that the acts of building associations fall properly within the powers granted. As soon as they transgress these limits, they are *ultra vires*.—Endlich on B. & L. Ass'n. § 276; Thompson on B. & L. Ass'n, § 103; Thornton & Blackledge on B. & L. Ass'n, § 399; *Meroney v. Atlanta B. & L. Ass'n*, 47 Am. St. Rep. 841; *MaCauley v. Building & S. Ass'n*, 56 Am. St. Rep. 813. All contracts and agreements of such corporations to the effect that the payment of periodical installments for a fixed period shall be accepted as payment in full of subscriptions to its stock are inconsistent with the statute under which the corporation has its existence, and antagonistic to the legal purposes and plans of such organization, and not enforceable as contracts merely.—*King v. B. L. & Invest. Union*, 48 N. E. Rep. 677.

The issuance of preferred stock by a building and loan association which is based on principles of co-operation, equality and mutuality, is void against public pol-

icy.—*Williar v. Baltimore Butchers' Loan & Annuity Ass'n.* 45 Md. 546; *Birmingham v. Md. Land & Perm. Homestead Ass'n,* 45 Md. 541.

The bill specifically sets out the usury, as it shows that appellee now claims ten thousand dollars as due on the mortgage, after appellant has paid the sum of thirteen thousand seven hundred and eighty dollars, which this court has repeatedly held is usurious, except where the statute exempts the transaction.—*Mobile B. & L. Ass'n. v. Robertson,* 65 Ala. 382; *Falls v. U. S. Saving L. & B. Co.,* 97 Ala. 417.

The appellant has a right as debtor to file a bill for an accounting, as he does not lose his identity as debtor, and this bill is not filed as a stockholder to make the corporation take any action, but as creditor or a mortgagor. He sustains the relation of debtor and mortgagor.—*Southern B. & L. Ass'n v. Anniston L. & T. Co.,* 101 Ala. 582.

HOLLOWAY & HOLLOWAY and W. L. MARTIN, *contra.*— One of the powers expressly conferred by statute upon defendant corporation is: "5. To levy monthly contributions from the shareholders, not to exceed one dollar per share in any one month." The contention on the part of the complainant is that the power here conferred is exclusive of every other method of raising money upon stock subscriptions; that because the association is vested with power to levy monthly contributions from shareholders, it is denied the power to issue stock and receive the payment of dues thereon in advance; that it negatives the power to issue "paid-up stock." The question has not been directly passed on by the courts of this State; but the authorities elsewhere are abundant to show that the contention is unsound.—*People v. Preston,* 140 N. Y. 549; *Hohenshell v. Savings Asso.,* 140 Mo. 566, 41 S. W. Rep. 984; *Latimer v. Equitable Loan & Investment Co.,* 81 Fed. Rep. 776; Thompson on Bdg. & Loan Ass'n. (2d ed.), §§ 130-135; 4 Am. and Eng. Encyc. Law, (2d. ed.), p. 1030; *State v. Equitable Loan & Investment Co.,* (Mo.) 41 S. W. 916; *Towle v. Am. Bdg. & Loan Ass'n,* 75 Fed. Rep. 938; *Latimer v. Eq. Loan & Investment Co.,* 81 Fed. Rep. 776; *Cook v. Equitable*

*B. & L. Ass'n.,* (Ga.) 30 S. E., 911; *Leahy v. National B. & L. Ass'n.* (Wis.) 76 N. W., 625.

Moreover, a borrowing member of a building and loan association cannot, for the purpose of avoiding the terms of his contract, assert that it or any other contract made with other stockholders is *ultra vires.—Brant v. Rainer,* (Cook Co. Sup. Ct.), 31 Chicago Leg. News, 301; *Leahy v. Nat. B. & L. Ass'n* (Wis.), 76 N. W., 625;. Thompson on B. & L. Ass'ns., (2d. ed.) p. 737.

A stockholder cannot maintain suit against corporation to redress alleged corporate wrongs until he has done all in his power to obtain, within the corporation, redress of the wrong complained of. This proposition is sustained by an unbroken line of decisions both in Alabama and elsewhere, and by every text writer upon the subject of corporations or of stockholders.—*Tuscaloosa Mfg. Co. v. Cox,* 68 Ala. 71, 317, 324; *Roman v. Woolfolk,* 98 Ala. 237; *Steiner v. Parsons,* 103 Ala. 220; *Bridgeport Development Co. v. Tritsch,* 110 Ala. 274; *Decatur Mineral Land Co. v. Palm,* 113 Ala. 531; *Nathan v. Tompkins,* 82 Ala. 437.

The complainant does not show any right to an accounting. There is no allegation that respondent has refused to state the account between complainant and the association, or that the profits of the association have not been ascertained and credited to the shares in force, including the shares of complainant, as provided by the by-laws of the association. Besides, complainant must show himself entitled to relief on the main ground before the court would consider the matter of accounting.—*Association v. Lake,* 69 Ala. 456, 465; *Hudson v. Vaughn,* 57 Ala. 609; *Avery v. Ware,* 58 Ala. 475; *Tecumseh Iron Co. v. Camp,* 93 Ala. 572.

The alleged misrepresentations touching the time when the stock should mature amount to no more than the expression of an opinion or judgment, on a matter which was equally open to both parties. An opinion expressed, if not realized, cannot, without more, become a fraudulent representation.—*Lake v. Association.* 72 Ala. 209; *Montgomery So. Ry. v. Matthews,* 77 Ala. 364; *Bradfield v. Elyton Land Co.* 93 Ala. 527; *Birmingham*

[Johnson v. National Building & Loan Association.]

*Warehouse & Elevator Co. v. Elyton Co.*, 93 Ala. 549; *Johnston v. Elizabeth etc. Assn.* 104 Pa. St. 394; *Thompson on Bdg. Assn.* § 69, note p. 178.

Complainants are estopped from denying the corporate character of the respondent, or that they are stockholders and members; nor is it material that they become members for the purpose of getting a loan.—*Pratt v. Nixon*, 91 Ala. 192; *Wilson v. Holt*, 91 Ala. 204; *Elyton Land Company v. S. & N. R. R. Co.*, 95 Ala. 644; *Memphis & Charleston R. Co. v. Grayson*, 88 Ala. 572; *Lake v. Security Loan Ass'n.* 72 Ala. 207; Endlich on Building Ass'n., § 55; Thompson on Bldg. Asso. § 34; Thornton & Blackledge on Bldg Asso. § 41, note.

That the building and loan contract, being authorized by law, is not usurious, is a question which may be regarded as *at rest.—Montgomery Mutual Bldg. & Loan Asso. v. Robinson*, 69 Ala. 413; *Security Loan Association v. Lake*, 69 Ala. 456; *Southern B. & L. Asso. v. Anniston, etc. Co.*, 101 Ala. 582; *Sheldon v. Birmingham B. & L. Asso.*, 25 So. Rep. 820; *Hayes v. So. B. & L. Asso.*, 26 So. Rep. 527.

DOWDELL, J.—The appellee here, respondent in the court below, is a domestic corporation organized under the general law of this State authorizing the incorporation of building and loan associations. The appellant is a member of said respondent and as such a borrowing stockholder. As shown by the bill, the appellant became a member and stockholder in said corporation in April, 1893, by subscribing for two hundred shares of the stock, of the par or face value of fifty dollars per share, on what is called and known as the installment plan. In May following, he obtained a loan of ten thousand dollars from the respondent company, and to secure the same he gave a mortgage on certain real estate described in the mortgage and also pledged as collateral his two hundred shares of stock. This mortgage is made an exhibit to the bill and contains the conditions and terms of contract of the loan. There is no dispute as to the amount of the loan, nor as to payment or credits on the same—except that it is claimed by the complainant that

the payments made by him as a stockholder for dues and premiums, should be applied as payments on the loan and go in discharge of the mortgage debt.   Neither is, there any dispute as to the amounts paid by the complainant by way of such dues and premiums, and interest on the loan.   It is alleged in the bill that the complainant began his negotiation for the loan concurrent with his becoming a member of and stockholder in the respondent company.   The purpose of the bill is to avoid the contract of complainant with respondent company as a member and stockholder and to have all payments made by him, as such stockholder, to the company, applied to the mortgage debt.

It is charged in the bill that the respondent association has issued six thousand shares of its stock, known as paid up stock, and that in so doing it acted without the scope of its powers and transcended the legitimate bounds of its creation, and that the same was an act *ultra vires* the corporation.   The by-laws of the association are made an exhibit to the bill, and by them it appears that the plan for the issuance of paid up stock as described in the bill is provided for. · It is, however, contended there is no legislative grant of such power, and in the absence of express statutory grant, the association is without right to exercise the power.

We have then the question presented, whether or not the building and loan association can in the absence of express legislative authority exercise the right or power of issuing prepaid or paid up stock, and this involves the inquiry as to whether such right comes within the legitimate scope of the business of a building and loan association.

One of the principal objects of a building and loan association is to create a loan fund for the benefit of its borrowing members, and the premiums and interest arising from the loans go to hasten the maturity of its stock. This being true, and we think there can be no doubt of the correctness of the proposition, it is obvious that the issuance of prepaid or paid up stock contributes directly to the promotion of the objects and end for which the

association is created, and reasonably and fairly comes within the scope of legitimate business.

While there may be found some authorities tending to support the contention of appellant, that in the absence of express legislative grant of power a building and loan association may not issue paid up stock, yet the weight of authority is to the contrary. In the recent work of Thornton & Blackledge on Building and Loan Associations, section 148, it is said: "It is no uncommon thing, for an association to issue paid up or prepaid stock; by which is meant stock paid for in full when it is issued, just like stock in an ordinary corporation paid for in full when issued to the holder. The statute may provide for this, or if it do not, then the association may do so under its general powers to enact by-laws. When issued, it is, in fact matured stock, to be treated just as any other other matured stock. Not infrequently the by-laws of an association provide for a particular kind of prepaid stock by allowing a member holding ordinary or common stock to return his stock after a certain time, and get a new certificate for a less number of shares. In that event the money paid on the old shares is applied to the new, and no more money is required until the money already paid in is exhausted. Such an agreement is valid. A prepaid shareholder is as much a member of the association as any other member. If insolvency intervenes, however, a member who holds paid up stock is not entitled to be classed as a creditor, and thus have preference over the other stockholders." To the same effect are the following authorities: Endlich on B. & L. Associations, (2d ed.) §§ 461-464; Thompson on B. & L. Association, (2d ed.), §§ 130-135; *People v. Preston,* 140 N. Y. 549; *Hohenschell v. Savings Association,* 140 Mo. 566;s. c. 41 S. W. Rep. 948; s. c. 4 Am. & Eng. Dec. in Equity, 9; *State v. Equitable Loan & Investment Co.,* (Mo.), 41 S. W. Rep. 916; *Towle v. Am. Building & Loan Association,* 75 Fed. Rep. 938; *Latimer v. Equitable Loan & Investment Co.,* 81 Fed. Rep. 776; *Cook v. Eq. B. &.L. Asso.,* (Ga.) 30 S. E. Rep. 911; *Leahy v. Nat. B. & L. Asso.,* (Wis.) 76 N. W. Rep. 625; 4 Am. & Eng. Encyc. Law (2d ed.), 1030.

In a note to the case of *Hohenschell v. Savings Association, supra,* reported in 4 Am. & Eng. Dec. in Eq. 9, it is said by the annotator, Mr. Stewart: "It seems to be now settled by the preponderance of authority that a building and loan association, under its general power, may issue, besides the ordinary form of installment stock, shares which have been either fully or partly prepaid, and stipulate for the payment of a specified dividend thereon, as long as that does not exceed a *pro rata* share of the profits, (or possibly, in the case of full-paid stock, the legal rate of interest, if the profits should fall below that) as long as the holders of such stock are given no undue advantage over the holders of the ordinary stock:—*Murray v. Scott,* 9 App. Cas. 519, affirming *In Re Guardian Permanent Benefit Bdg. Society,* 23 Ch. D. 440, 453; *In Re Middlesbrough, R. S. & C. Dist. Permanent Benefit Bdg. Society,* 53 L. T. (N. S.) 203; *In Re Reliance Permanent Benefit Bdg. Society,* 61 L. J. Ch. 453; *Latimer v. Equitable Loan & Investment Co.,* 81 Fed. Rep. 776; *State v. Equitable Loan & Investment Co.,* (Mo.) 41 S. W. Rep. 916; *People v. Preston,* 140 N. Y. 549; *Criswell's Appeal,* 100 Pa. 488."

From the foregoing authorities as well as from a common sense view, and upon common business principles, we are led to the conclusion, that although there may not be an express legislative grant of power in the charter, there being no legislative prohibition, the association under its general powers to enact by-laws may provide for the sale and issuance of paid up stock.

The complainant bears a dual relation to the defendant company—that of a member or stockholder in said association, and that of a borrower from the same. His contract with the association as a stockholder and member is distinct from that as a borrower. As a member of the association he agrees to pay certain dues and assessments and becomes entitled to certain privileges and benefits, and as a borrowing member he obligates himself to pay the loan obtained with interest and premiums.

The contract of loan as set out in the mortgage being such as the association was authorized by law to make, is not usurious.—*Montgomery Mutual Bdg. & Loan As-*

sociation v. Robinson, 69 Ala. 413; *Security Loan Asso-ciation v. Lake,* 69 Ala. 456; *Southern B. & L. Asso. v. Anniston etc. Co.,* 101 Ala. 582; *Sheldon v. Birmingham B. & L. Asso.* 121 Ala. 278; *Hayes v. Southern Home B. & L. Asso.,* 124 Ala. 663.

It is charged in the bill that in the issuance of the paid up stock, the paid up stockholder is given an advantage over the complainant as installment stockholder. This becomes then a question of corporate wrong in the abuse of, or improper exercise of, corporate power. If injury results to the shareholder in the abuse of corporate power, the wrong may be redressed within the corpora-tion, and the stockholder cannot maintain a suit against the corporation to redress corporate wrongs, until he has done all in his power to obtain within the corpora-tion, redress for the wrong complained of, or else shown by his bill a reason for his failure to do so.—*Tuscaloosa Manufacturing Co. v. Cox,* 68 Ala. 71; *Merchants & Planters Line v. Waganer,* 71 Ala. 581; *Roman v. Wool-folk,* 98 Ala. 237; *Nathan v. Tompkins,* 82 Ala. 437; *Steiner v. Parsons,* 103 Ala. 220; *Bridgeport Dev. Co. v. Tritsch,* 110 Ala. 274; *Decatur Min. & Land Co. v. Palm,* 113 Ala. 531.

The present bill is wanting in the necessary averments as a bill by a stockholder against the corporation for the redress of corporate wrongs.

Moreover, the plan for the issuance of paid up stock is provided for in the by-laws of the respondent company, and so far as the bill shows the very conditions out of which the supposed inequality arises between the two classes of stock, existed when the complainant sub-scribed for his stock and became a member of the asso-ciation. For aught that can be known from the bill, the six thousand shares of paid up stock mentioned had al-ready been issued by the association when the complain-ant subscribed for his stock, and even if it had not been, he had notice that the issuance of paid up stock, and upon the plan that the six thousand shares were actually issued, was provided for and authorized by the by-laws. The complainant with this knowledge became a mem-ber of the association as an installment stockholder,

prompted as he says, by a desire to secure a loan of ten thousand dollars of the funds of the association, and having secured the loan and had the use of the same for the loan period stipulated in the mortgage, he now seeks through a court of equity to evade the payment of his debt by having his contract of membership in the association annulled on account of alleged corporate wrongs, of which he had full knowledge when he became a member and obtained the loan. Independent of the consideration of other questions as to the right of the complainant as a stockholder to maintain a suit against the corporation to redress corporate wrongs upon a proper bill filed, these facts do not commend the complainant to a court of equity as one who is entitled to the relief sought by the present bill.

As to the charge of fraud, it is not shown by the bill in what the alleged false and fraudulent representations consisted, further than it is averred, "that the true consideration of said mortgage was, that complainant was to pay the corporation monthly the sum of $190 per month for sixty-five months, and at the outside limit he was to pay only seventy-two months." This evidently relates to the matter of the maturing of the stock, a matter of opinion or judgment, and so far as is shown by the bill, equally open to both parties. In *Mont. So. R'y. Co. v. Matthews,* 77 Ala. 364, it was said by this court, speaking through STONE, C. J.: "An opinion expressed, even if not realized, cannot, without more, become a fraudulent representation. If, however, such opinion is falsely expressed, with intent to deceive, and does deceive, this constitutes such opinion or representation a false statement of fact, and vitiates a contract thereby procured, unless the representation relates to a matter equally open to both parties. This could not deceive." *Lake v. Association,* 72 Ala. 209; *Bradfield v. Elyton Land Co.,* 93 Ala. 527; *Birmingham Warehouse &c. Co. v. Elyton Land Co.,* 93 Ala. 549; Thompson on B. & L. Asso., p. 178, note.

Upon the question of an accounting, as we have stated above, there is no dispute as to the amount of the loan nor as to the payments made by the complainant either

in his character as borrower or as a stockholder; and it may be added here that there was never any demand and refusal for an accounting so far as the bill shows. We do not think the complainant shows himself entitled to maintain the bill for an accounting under its averments. 1 Ency. Pl. & Pr., 98; *Association v. Lake,* 69 Ala. 456, 465; *Hudson v. Vaughan,* 57 Ala. 609; *Avery v. Ware,* 58 Ala. 475; *Tecumseh Iron Co. v. Camp,* 93 Ala. 572.

Our conclusion is that the bill is without equity, and the court below committed no error in the decree sustaining the demurrer to the bill, and that ruling must be affirmed. On the cross-appeal from the decree overruling the motion to dismiss the bill for want of equity and to dissolve the injunction, we are of opinion the court erred in overruling the motion and refusing to dissolve the injunction, and this action of the court must be reversed. That the complainant may have an opportunity of meeting the ruling here made in holding the bill in its present shape to be without equity, by amending the same, the cause will be remanded for such opportunity.