THE PEOPLE ex rel. CHARLES S. FAIRCHILD, Appellant, *v.* CHARLES M. PRESTON, Superintendent of Banks, Respondent.

Under the provisions of the Banking Law providing for the incorporation of building and mutual loan corporations (§ 170, chap. 689, Laws of 1892) a certificate of incorporation may provide for prepaid and income stock, as well as stock payable in installments.

While, *it seems*, a certificate which does not provide for the payment of monthly or weekly dues by any member wishing to pay in that way would be a departure from the law, it does not limit such a corporation to installment stock.

Where, therefore, the superintendent of banks refused to file a certificate which provided for installment, prepaid and income stock, because it was not confined to the former, *held*, error; and that a mandamus was proper to compel the filing.

(Argued December 19, 1893; decided January 16, 1894.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department, made December 5, 1893, which affirmed an order of Special Term denying an application by the relator for a mandamus against the superintendent of banks to compel him to approve and file a certificate of incorporation of the Peter Cooper Savings and Loan Society.

The certificate in question recited that the signers thereof had associated themselves together " to form a corporation for the purpose of accumulating a fund for the purchase of real property, the erection of buildings or the making of other improvements on land and paying off incumbrances thereon, aiding its members in acquiring real estate, making improvements thereon and removing incumbrances therefrom, and for the further purpose of accumulating a fund to be returned to its members who do not obtain advances when its funds shall amount to $100 per share."

The provision of the certificate as to capital and stock is as follows:

" XXII. *Capital and stock.*—The capital of the corporation shall consist of the accumulated savings of its stockholders

paid in upon stock, with the profits arising from the invest-
ment thereof.

"The stock of the corporation shall consist of shares of the
maturity or par value of $100 each, and shall be of three
kinds or classes, to be known as installment, prepaid and
income stock.

"Upon installment stock cash dividends shall not be paid,
but the profits awarded to such stock shall be credited thereto
until the maturity of the stock. The directors may permit
payment of dues in advance on such stock, and upon such
advance payments allow a rebate or discount at such rate per
centum per annum for the time of payment in advance as
they shall from time to time prescribe.

"Upon prepaid stock there shall be paid at the time of sub-
scription dues to the amount of sixty dollars, and the holder
thereof shall be entitled to receive out of the profits appor-
tioned thereto semi-annual dividends in cash up to the rate of
six per cent per annum. The profits apportioned to such stock
over and above such dividends shall be credited thereto and
be payable with the stock at its maturity.

"Upon income stock there shall be paid at the time of sub-
scription dues to the amount of sixty dollars, and the holder
thereof shall be entitled to receive out of the profits appor-
tioned thereto semi-annual dividends in cash up to the rate
of eight per cent per annum. Any balance of profits appor-
tioned to such stock, over and above the sum requisite to pay
such dividends, shall not be credited thereto, but shall be
reapportioned and credited to the other stock of the
corporation.

"The board of directors may, at any time, refuse to issue
income or prepaid stock, and may retire at any time any stock
issued by the corporation by giving thirty days' written
notice to the holder of such stock and paying to him the full
value thereof as the same appears upon the books of the
corporation.

"All stock shall mature and be paid when the dues paid in
thereon, with the profits apportioned and credited thereto,

including cash dividends paid thereon, shall equal $100 per share.

"No member shall hold more than 300 shares of stock; provided, however, that he may, in addition to his individual holding, hold a like number as trustee for a minor child or children."

The facts, so far as material, are stated in the opinion.

*Matthew Hale* for appellant. The right to issue prepaid stock, in the discretion of the incorporators or board of directors, is expressly given to associations of this kind by statute. (Laws of 1892, p. 1824, §§ 1, 3.) Even without the affirmative provisions of the Stock Corporation Law, the certificate would not, in providing for prepaid stock, be illegal or unauthorized by law. (Laws of 1851, chap. 122, § 7; Laws of 1875, chap. 564; Thompson on Bldg. Assn. 61; Davis on Bldg. Soc. 69; Endlich on Bldg. Assn. § 46.) The precise question involved on this appeal has been decided in favor of the contention of the appellant by the highest courts of England. (Chap. 32, 6 & 7 Wm. IV; 37 & 38 Vict. chap. 42; Scratchley on Bldg. & Land Soc. 430; *Scott's Case*, L. R. [23 Ch. Div.] 453; *Murray* v. *Scott*, L. R. [9 App. Cas.] 523.)

*S. W. Rosendale, Attorney-General,* for respondent. The certificate presented for approval did not comply with the provisions of the Banking Law in that it allows the issuance of "prepaid stock" and "income stock," so called. (Laws of 1892, chap. 687, § 10; *Janet* v. *Cope,* 68 Penn. St. 67; *Kupfert* v. *G. B. & S. Assn.,* 30 id. 465; *N. A. B. Assn.* v. *Sutton,* 35 id. 463–467; Laws of 1892, chap. 689; Thompson on Bldg. Assn. 2, 60, 61; Laws of 1851, chap. 122; Laws of 1887, chap. 556.)

EARL, J. The relator and others attempted to form a corporation under article 5 of the Banking Law (Chapter 689 of the Laws of 1892), and for that purpose they made and acknowledged a certificate under section 170. They presented the certificate to the defendant as the superintendent

552     People ex rel. Fairchild *v.* Preston.     [Jan.,

Opinion of the Court, per Earl, J.     [Vol. 140.

of banks, to be approved and filed by him as required by that section, and he declined to approve or file it on the ground that it provided for three kinds of stock, to wit, installment, prepaid and income stock, his claim being that such a corporation can have only installment stock to be paid for in installments. The relator then applied for a peremptory writ of mandamus to compel him to approve and file the certificate, and his application has been denied.

Persons seeking to form a corporation under any general law must have a reasonable latitude as to what they may insert in their certificate of incorporation. They must insert therein all the matter particularly required by the law, and they may insert other provisions not inconsistent with law or public policy which are germane to the purposes of the corporation, and necessary, convenient or appropriate to the accomplishment of such purpose. If they keep within such limits the public authorities have no reason to interfere, the interests of the public are not jeopardized, and the rights of no citizen are violated. Section 170, after specifying certain matters to be inserted in the certificate of incorporation under that section, specifically provides that the certificate may contain " such other provisions not inconsistent with law as shall be necessary for the convenient and effective transaction of its business." There is no requirement in the law that the stock of such a corporation shall be paid for in installments from time to time as they fall due. The law requires the certificate to set forth " the amount of each share " of stock, and " the monthly or weekly dues per share." A certificate which did not provide for the payment of monthly or weekly dues by any member of the corporation who wished to pay in that way, would undoubtedly be a departure from the law. The evident purpose of the law is to authorize the formation of these corporations mainly for the benefit of wage earners and other people of limited means to enable them to acquire homes and to accumulate their savings, and no provision should be inserted in any certificate of incorporation under this law which would thwart this purpose.

This certificate provides for shares of $100 each, and for monthly dues of fifty cents on each share. The general scheme is that the dues, fees, penalties and all other income of the corporation shall go into a common fund, and from this fund annual dividends are to be made which are to be applied upon the shares of stock until they are fully paid for. Dues may be paid in advance with the assent of the directors, and upon such advance payments the directors may allow a rebate or discount at such rate per annum for the time of payment in advance as they shall from time to time prescribe. Such payments instead of being contrary to the purpose of such corporations may be promotive of that purpose. If a wage earner has the money it may be wise to permit him to make the advance payments, and thus to save his money; and in this way, too, money is accumulated by the corporation more rapidly for loan to its members. So, the law is not violated by these advance payments upon installment stock, and no injustice is done to any of the members thereby.

The certificate provides that "upon prepaid stock there shall be paid at the time of subscription, dues to the amount of sixty dollars, and the holder thereof shall be entitled to receive out of the profits apportioned thereto semi-annual dividends in cash up to the rate of six per cent per annum. The profits apportioned to such stock over and above such dividends shall be credited thereto and be payable with the stock at its maturity." The character of such stock must be determined at the time of the subscription. What harm can come from the creation of such stock? It allows a member who has money enough to pay his dues for ten years in advance, and why is that not wise policy? Having thus paid in advance his dividends are not needed to carry his stock to maturity, and hence he may draw his dividends up to six per cent, and the balance of his dividends over that sum are applied to carry his stock to maturity. He has no advantage over the holders of installment stock. Their dividends are applied to carry their stock to maturity, and they thus have the same benefit that they would have if the dividends were

**554**     People ex rel. Fairchild *v.* Preston.     [Jan.,

Opinion of the Court, per Earl, J.          [Vol. 140.

first paid to them and then by them paid upon their stock. All dividends are required to be made upon the net sums to the credit of the shares, and not upon the par value of the shares, and hence the holders of prepaid shares get precisely the same dividends proportioned to the amount standing to the credit of their shares as are paid to other stockholders and no more. It is impossible for us to perceive how this scheme violates the law or any public policy. It does not prevent or defeat equality or mutuality among the members; and if the prepaid stock is to be condemned, then it is not perceived how prepayment of installments upon installment stock can be upheld. Money must come into the treasury of one of these corporations from the small monthly dues very slow, and members desiring to borrow the money for the purchase or improvement of homes must wait a long time before they can be accommodated with loans from money thus contributed, but if prepayment of dues is permitted the ability of the corporation to aid its members by loans is greatly facilitated, and the main purpose of the corporation is thus promoted.

The income stock upon which the members are also required to pay in advance $60 per share differs from the prepaid stock only in the fact that the holder of such stock may receive dividends in cash up to eight per cent, and in case the dividends are more, such dividends are apportioned among the holders of other kinds of stock; and what we have said about the prepaid stock applies to this stock. The corporation has protection against the prepaid and income stock, as it is provided in the certificate that the directors may at any time refuse to issue such stock, and may at any time, upon thirty days' notice, retire such stock by paying the book value thereof.

But it is said that there is no requirement that the prepaid and income stock shall be carried to maturity so as to be full paid. We are not sure of this. As the shares are fixed at $100, and are not mature until they reach that sum, it may be that the directors may require that these shares shall, at the proper time, be brought to maturity on an equality with the

other shares.   But even if this be not so, no injustice can come from this situation, because in no event can the holder of these shares draw more than the amount that has been credited upon them, nor can they draw dividends on more than such amounts.

In England building and loan associations existed and were authorized and regulated by statute long before any of them were organized in this country, and in 1874 they were specially authorized by law to have prepaid stock.   (Chapter 42 of 37 & 38 Vict., sect. 5.)   There it was held in *Scott's Case* (L. R. [23 Ch. Div.] 453), that under the law as it existed prior to 1874, which was substantially like the present law of this state, prepaid stock was not illegal.   There the learned Master of the Rolls said : "Again, is it contrary to the constitution of such a society that members shall pay up installments in advance ?   I say clearly not.   The more money you get from investing members the more money you have ready to advance to the borrowing members, and the more rapidly you will bring your society to an end if the society is established without a fixed period.   It seems to me there is no reason why the judicature should say that these arrangements, which, as far as I am concerned, appear to be perfectly reasonable, and not only framed not to obstruct, but to further the objects of these societies, are illegal because they are contrary to the policy on which these societies are founded."   And that case was affirmed in the House of Lords.   (L. R. [9 App. Cases] 523.)

Our conclusion, therefore, is that the order of the General and Special Terms should be reversed, and the case remitted to the Special Term for its action upon the relator's application, with costs in all the courts to the relator against the defendant.

All concur, except PECKHAM, J., not voting, and BARTLETT, J., not sitting.

Order reversed.