PACIFIC BUILDING & LOAN ASS'N v. HARTSON.

(District Court, W. D. Washington, S. D. January 15, 1913.)

No. 1,132, in Equity.

*(Syllabus by the Court.)*

INTERNAL REVENUE (§ 9*)—CORPORATION TAXES—STATUTORY PROVISIONS.

Upon demurrer to complaint, asking the refunding of certain corporation taxes paid by complainant under Act Cong. Aug. 5, 1909, c. 6, § 38, 36 Stat. 112 (U. S. Comp. St. Supp. 1911, p. 946), and that the collection of further taxes be enjoined. *Held* not within exception. Demurrer sustained.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. § 9.*]

In Equity. Suit by the Pacific Building & Loan Association against Millard T. Hartson. Demurrer to complaint sustained.

B. S. Grosscup and W. C. Morrow, both of Tacoma, Wash., for complainant, cited Flint v. Stone-Tracy Co., 220 U. S. 107, 31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; U. S. v. Trinidad Coal Co., 137 U. S. 160, 11 Sup. Ct. 57, 34 L. Ed. 640; Union Ins. Co. v. Hoge, 62 U. S. (21 How.) 35, 16 L. Ed. 61; Gibbons v. Mahon,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

136 U. S. 549, 10 Sup. Ct. 1057, 34 L. Ed. 525; Latimer v. Equitable L. & Inv. Co. (C. C.) 81 Fed. 776, 782; Sharon v. Sharon, 75 Cal. 1, 16 Pac. 345–359; Robison v. Wolf, 27 Ind. App. 683, 62 N. E. 74–77; Spruance v. Farmers' & Merchants' Ins. Co., 9 Colo. 73, 10 Pac. 285, 287; Hamilton v. Des Moines Valley R. Co., 36 Iowa, 31, 39; Mygatt v. N. Y. Pro. Ins. Co., 21 N. Y. 52, 65; Muller v. St. Life Ins. Co., 27 Ind. App. 45, 60 N. E. 958, 960; Splawn v. Chew, 60 Tex. 532–535; Cook on Corporations (3d Ed.) §§ 9, 12; Fisher v. Essex Bank, 5 Gray (Mass.) 373; In re Stillwell's Est. (N. Y. Sur.) 34 N. Y. Supp. 1123; In re Birdsall's Est., 22 Misc. Rep. 180, 49 N. Y. Supp. 450–455; Opinions Attorneys General for 1910, page 194.

B. W. Coiner, U. S. Atty., of Tacoma, Wash., and C. F. Riddell, Asst. U. S. Atty., of Seattle, Wash., for defendant, cited 39 Cyc. 257; Eversmann v. Schmitt, 53 Ohio St. 174, 41 N. E. 139, 141, 142, 29 L. R. A. 184, 53 Am. St. Rep. 632; 6 Cyc. 120; 28 Cyc. 1781; 36 Cyc. 1304–1307; Rhodes v. Mo. Sav. & Loan Co., 173 Ill. 621, 50 N. E. 998, 1000, 42 L. R. A. 93; Opinions of Attorneys General for 1910, page 189 and following.

CUSHMAN, District Judge. This case is brought, asking the refunding of certain corporation taxes paid by complainant to the defendant, collector of internal revenue, and that the collection of further taxes be enjoined. The tax is under section 38 of the act of August 5, 1909 (36 Stat. pt. 1, p. 112). Complainant claims that it does not fall within the act, and that, if it does, it comes within the exception therein. The act provides:

"That every corporation, joint-stock company or association, organized for profit and having a capital stock represented by shares * * * shall be subject to pay annually a special tax: * * * Provided, however, that nothing in this section contained shall apply * * * to domestic building and loan associations, organized and operated exclusively for the mutual benefit of the members, * * * no part of the net income of which inures to the benefit of any private stockholder or individual."

The cause is before the court upon defendant's demurrer to the complaint, which alleges that complainant is a Washington corporation, organized under the laws of that state relating to the incorporation of building and loan associations. The Washington statutes provide:

"Whenever any number of persons not less than ten desire to be incorporated as a building and loan association, for the purpose of accumulating the savings and funds of its members and lending its shareholders or others the funds so accumulated, they shall make and execute a written declaration to that effect in the form now provided by statute for the execution of deeds of real estate, to entitle the same to record. * * * Upon complying with the foregoing requirements, and upon filing an affidavit of proof of such publication in the office of the Secretary of State, the persons executing such declaration, their associates and successors, shall become a corporate body." Section 7128, Pierce's Code; section 3601, 2 Rem. & Bal. Code.

"The name 'building and loan association,' as used in this act, shall include all corporations, societies, organizations or associations doing a saving and loan or investment business on the building society plan, whether neutral [mutual] or otherwise, and whether issuing certificates of stock which mature

at a time fixed in advance or not." Section 7149, Pierce's Code; section 3622, 2 Rem. & Bal. Code.

"Any shareholder whose stock has not been declared forfeited in such association, and whose share or shares are not pledged upon a loan, may withdraw such share or shares from the association at any time after one year, by giving at least sixty days' notice in writing to the secretary of his intention to do so. * * *" Section 7154, Pierce's Code; section 3627, 2 Rem. & Bal. Code.

"All corporations organized in this state and doing business in this or any other state as building and loan associations, shall comply with and be subject to all the provisions of this act within sixty days after its passage. * * *" Section 7160, Pierce's Code; section 3633, 2 Rem. & Bal. Code.

"Each association shall adopt by-laws for its government, and therein describe the manner in which its business shall be transacted, which by-laws shall be in conformity with the provisions of this act, and the laws of this state. * * *" Section 7130, Pierce's Code; section 3603, 2 Rem. & Bal. Code.

"For every loan made a note or bond secured by first mortgage on real estate shall be given, which security shall be double the value of the loan and satisfactory to the directors, and where the borrowers are shareholders of the association, the loan shall also be secured by a pledge of their shares as collateral security: Provided, that the directors in their discretion may loan upon the security of the association stock to the amount of its withdrawal value, and may also loan upon or invest in approved federal, state, county and municipal bonds and warrants." Section 7131, Pierce's Code; section 3604, Rem. & Bal. Code, vol. 2.

The articles of incorporation provide:

"We do desire to be incorporated as a building and loan association for the purpose of accumulating the savings and funds of the members of said association, and lending the shareholders of such association and others, the funds so accumulated. The business operations of this association are to be confined wholly to Pierce county and the counties adjacent thereto."

Provision is also made for 10 directors. The by-laws provide that the company—

"is entirely *mutual*, there being no preferred stock. No member shall hold more than *one hundred shares of stock.*"

"The *authorized capital stock* of this company shall be four million ($4,000,000.00) dollars, *divided into forty thousand (40,000) shares* of the par value of one hundred ($100.00) dollars each."

It is further provided that the directors *shall be elected by the shareholders,* who vote by share, unless in arrears. The directors pass upon all loans, fix the rate of interest, and direct its investments. The by-laws provide:

"Article IV.

"Section 1. The stock issued by this association shall be of one kind, to wit:

"Investors' guaranteed dividend stock, which is payable in monthly installments of fifty cents (50¢) for each share, the par value of which shall be one hundred ($100.00) dollars. If the payments on this stock are made regularly for a period of ninety-six (96) months, and not otherwise, the then legal holder may withdraw all payments so made with interest at the rate of seven per cent. (7%) per annum for the average time the payments have been on deposit, and all other profits that may have accrued to the credit of said shares: Provided, that the entire amount may be paid at any time, and the extra payments so made may be withdrawn on sixty days' notice with interest at the rate of five per cent. (5%) per annum. No interest will be allowed on a deposit withdrawn before six months. The payments on this stock are due and payable on the twentieth day of each and every month.

"The following table is the guaranteed loan and surrender values after one year, based on one share:—

|  |  |  | Paid-up Certificate for |
|---|---|---|---|
| 12 months | Loan | $3.08 | $10.00 |
| 24 months | Loan | 8.32 | 21.00 |
| 36 months | Cash | 18.00 | 32.00 |
| 48 months | Cash | 24.35 | 42.50 |
| 60 months | Cash | 31.80 | 53.00 |
| 72 months | Cash | 39.33 | 63.00 |
| 84 months | Cash | 48.71 | 72.00 |
| 96 months. | Return of all payments with 7% per annum for average time on deposit. | | |

"Not more than one-half of the money received in stock payments shall be used to pay withdrawing members, and such payments shall be made in the order in which certificates have been presented for cancellation."

## "Article V.

"Section 1. The investment fund shall consist of all money received on stock payments and all profits earned, except such proportion thereof as belongs to the expense fund as provided in these by-laws, and shall be chargeable with all dividends declared, interest upon borrowed money, interest paid on the withdrawal of stock, and all taxes and fire insurance premiums or other sums necessarily expended to protect the investments or loans of the company.

"Sec. 2. The expense fund shall consist of membership fees and other premiums on stock, and one per cent. (1%) per annum on the par value of all stock issued by this company, and one per cent. (1%) per annum on all loans to nonmembers of the association. The expense fund shall be chargeable with all expenses of management.

"Sec. 3. A surplus fund shall be created by using twenty-five per cent. (25%) of the expense fund herein provided for which surplus fund shall be drawn on when necessary to fulfill any guaranty.

"During the month of January of each year, beginning with the January prior to the maturity of the first outstanding stock, the directors shall determine what amount of such accumulated surplus fund is necessary to meet the outstanding guaranties, and the balance of such fund shall be distributed to the stockholders whose stock matures during that calendar year.

"The moneys in said fund may be invested in the discretion of the board of directors in such forms of investment as other funds of the company are required by law and these by-laws to be invested.

"Sec. 4. Whenever the directors consider it advisable, they are authorized to borrow money temporarily for the company.

"Sec. 5. Whenever considered advisable by the executive committee, they are authorized to enter into a contract or to ratify any contract already made with one or more persons to develop the company's business: Provided, no further compensation be allowed than the amount set aside in these by-laws as an expense fund."

Section 1, art. 6, of the by-laws is the same as section 7131, Pierce's Code (section 3604, Rem. & Bal.) of the statute above set out.

## "Article VII.

"Section 1. At any time, should the directors find that the income of the association cannot be loaned profitably, they may cancel any outstanding certificates of *general stock* not borrowed upon, and shall pay the legal holder thereof an amount equal to the book value of stock so cancelled, and the depositing of a copy of the resolution of the board of directors ordering the redemption of such stock, postage prepaid, in the postoffice at Tacoma, Washington, addressed to the last known address of each shareholder as furnished to the association and as shown by its books, shall be deemed a good and sufficient tender, and within thirty (30) days thereafter all the rights and

equities of any holder of any such stock in any further profits shall be terminated."

The injunctive relief herein asked must be denied under the plain provisions of section 3224, R. S. (Thomson, Federal Statutes Annotated, volume 3, page 600).

Complainant sues as a corporation. It is admitted that it is a corporation organized for profit under a law, but complainant contends that it has not a capital stock represented by shares. The "building and loan association" statutes cover, not only "mutual" companies, but those doing business planned on other lines. They also insure the shareholder, whose stock has not been forfeited and whose shares are not pledged, the right of withdrawal, and all of the provisions of the act are made applicable to those corporations organized and doing business in the state as building and loan associations.

The articles provide that the issued capital stock of the company shall be $4,000,000, divided into 40,000 shares of the par value of $100 each, that no member shall hold more than 100 shares of the stock, and that the shareholders shall vote for the corporate directors by the share. There are other provisions in the articles and by-laws concerning the shares of stock in this corporation, but the complainant contends that mere words should be disregarded and the character of the association examined.

In an ordinary corporation, the capital stock is fixed and the shareholder has a right to a voice in its management, a share in its profits, and to receive an aliquot part of the proceeds of its capital on the winding up of a corporation. It is contended that these are essentials which show that the shares issued by the complainant differ from corporate shares.

If this corporation were, at any particular time, dissolved, the assets of the corporation would, unquestionably, be distributed pro rata among the then shareholders. Therefore, as to its present members, it is a corporation having capital stock represented by shares, although, by the maturing of the stock and the retirement of shareholders, its shareholding membership is constantly changing.

A building and loan association differs in some respects from the ordinary corporation; but the federal statute itself shows, by the exception therein contained, that Congress intended to exempt what would otherwise have been included, but for the express exception. The exemption is not of all building and loan associations, nor those tested by the ordinary characteristics of corporation shares of stock, above pointed out, but the exemption is of—

"domestic building and loan associations * * * organized and operated exclusively for the mutual benefit of the members, no part of the net income of which inures to the benefit of any private stockholder or individual."

A shareholder in the complainant corporation does not acquire with his shares a fixed aliquot part in the property of the corporation, but only such part of its authorized stock. With an increase in its membership, the fraction representing his interest in the whole has become smaller; but the total capital correspondingly is increased, so that the

actual value should not diminish, but it is not a fixed share of the whole.

The tax is not upon corporations "divided" into shares, but "represented" by shares. The former would imply more fixity than the latter. No matter how the stock issued in this corporation expands or contracts, it continues to be "represented" by shares until the last share is retired.

Only one kind of stock is provided for in the by-laws, designated as "investors' guaranteed dividend stock," and bearing interest at the rate of 7 per cent. for the average time the payments have been upon deposit. It has been argued that this guaranty feature does not destroy the mutuality of the shareholders in all of the profits; that, if all of the stockholders were to exercise the privilege of withdrawing at the same time, the guaranty would be of no value. In practice, such a thing would not likely occur. Those whose stock has matured, and who exercised the privilege, secure 7 per cent., under the guaranty, together with other profits that may have accrued to the credit of said shares. If the association had made less than 7 per cent. profit annually, when a sufficient number of its shareholders had exercised the privilege afforded by the guaranty, the remainder would be stripped of their profit.

There is a further provision in the by-laws (page 13 of the bill of complaint), which states:

"Not more than one-half of the money received in stock payments shall be used to pay withdrawing members, and such payments shall be made in the order in which certificates have been presented for cancellation."

Clearly the effect of this provision is to make two classes of stock. Assuming that a uniform profit of 7 per cent. is made upon investments and loans, then, under the guaranty above, the first half of the subscribing shareholders would have the absolute right of withdrawal; but the rest, the later subscribers, would be forced to remain in the company, which would make their stock "common stock." If the profits were less than 7 per cent., they would not receive as much as the early subscribers exercising the privilege of withdrawal, and if the profits were more than 7 per cent. their profits would be greater. In any event, the "mutuality" in the profits of the association is clearly destroyed by this provision.

In view of the provisions for the loaning of the funds of the corporation to nonmembers, for issuing preferred or guaranteed interest-paying stock, and that allowing the directors, upon finding that the income of the association cannot be loaned profitably, to "cancel any outstanding certificates of general stock not borrowed upon," paying the holder the book value of the stock so canceled, thereby being authorized to retire any and all stock in their discretion, it is clear that the complainant cannot be said to be—

"organized * * * exclusively for the mutual benefit of the members, no part of the net income of which inures to the benefit of any private stockholders or individuals."

Demurrer sustained.