CENTRAL BUILDING, LOAN & SAVINGS CO. v. BOWLAND, Internal Revenue Collector.

BELLEFONTAINE BUILDING & LOAN CO. v. McMAKEN, Internal Revenue Collector.

Nos. 1672, 1674.

(District Court, S. D. Ohio, W. D. May 11, 1914.)

TAXATION (§ 229*)—CORPORATION TAXES—EXEMPT CORPORATIONS—BUILDING AND LOAN ASSOCIATIONS.

That building and loan associations incorporated under the Laws of Ohio were authorized to borrow money from, or loan money to, nonmembers, did not deprive them of the quality of mutuality or place them on a par with banking corporations, nor deprive them of exemption from corporation taxation under Corporation Excise Tax Act Aug. 5, 1909, c. 6, § 38, 36 Stat. 112 (U. S. Comp. St. Supp. 1911, p. 946), imposing an internal revenue tax on corporations organized for profit, and providing that it should not apply to domestic building and loan associations organized and operated exclusively for the mutual benefit of their members.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 369; Dec. Dig. § 229.*]

Action by the Central Building, Loan & Savings Company against Willis G. Bowland, as Collector of Internal Revenue for the Eleventh

District of Ohio, and by the Bellefontaine Building & Loan Company against William V. McMaken, as Collector of Internal Revenue for the Tenth District of Ohio, to recover certain corporation taxes assessed against plaintiff in each case, under Corporation Act Aug. 5, 1909, § 38. Judgment for plaintiff in each case.

L. F. Sater, of Columbus, Ohio, F. L. Wells, of Wellsville, Ohio, and Andrew J. Hess, of Sidney, Ohio, for plaintiff Central Building, Loan & Savings Co.

J. E. West, of Bellefontaine, Ohio, F. L. Wells, of Wellsville, Ohio, and Andrew J. Hess, of Sidney, Ohio, for plaintiff Bellefontaine Building & Loan Co.

Sherman T. McPherson, of Cincinnati, Ohio, for defendants.

HOLLISTER, District Judge. These cases were removed to this court by the defendants in the respective cases, the first from the Franklin common pleas, and the second from the Logan common pleas, and the records in each certified to this court. The respective plaintiffs had paid under protest the tax imposed by the act of Congress, Aug. 5, 1909, c. 6, § 38, 36 Stat. 112 (U. S. Comp. St. Supp. 1911, p. 946), known as "special excise tax on corporations," and these suits were brought to recover the amounts paid. The defendant in each case, the collector of internal revenue to whom the tax was paid, hereinafter called the government, demurs for that the petition against him does not state facts sufficient to constitute a cause of action.

So much of the act as this controversy involves provides:

"Sec. 38. That every corporation, joint stock company or association, organized for profit and having a capital stock represented by shares, * * * shall be subject to pay annually a special excise tax with respect to the carrying on or doing business by such corporation, joint stock company or association, * * * equivalent to one per centum upon the entire net income over and above five thousand dollars. * * * Provided, however, That nothing in this section contained shall apply to labor, agricultural or horticultural organizations, or to fraternal beneficiary societies, orders, or associations operating under the lodge system, and providing for the payment of life, sick, accident, and other benefits to the members of such societies, orders, or associations, and dependents of such members, nor to domestic building and loan associations, organized and operated exclusively for the mutual benefit of their members, nor to any corporation or association organized and operated exclusively for religious, charitable, or educational purposes, no part of the net income of which inures to the benefit of any private stockholder or individual."

For the purposes of these demurrers, the plaintiffs are assumed, under the allegations in their respective pleadings, to have been organized under the Ohio Laws, as now found in 4 Page and Adams Annotated Ohio Gen. Code (1911) § 9643 et seq., under the title: "Division IV. Building and Loan Associations, Chapter 1. Organization and Powers."

Section 9643 reads:

"A corporation for the purpose of raising money to be loaned to its members, and others, shall be known in this chapter, * * * as a 'building and loan association,' or as a 'savings association.' Associations organized under the laws of this state shall be known as 'domestic' associations, and those organized under the laws of other states or territories, as 'foreign' as-

sociations. Associations may be organized and conducted under the general laws of Ohio relating to corporations, except as otherwise provided in this chapter."

Among the powers given Ohio domestic building and loan associations are:

"Sec. 9648. To receive money on deposits, and all persons, firms, corporations and courts, their agents, officers and appointees may make such deposits and stock deposits, but such corporation shall not pay interest thereon exceeding the legal rate. * * *

"Sec. 9649. To issue stock to members on such terms and conditions as the constitution and by-laws provide. Each member may vote his stock in whole or fractional shares, as the constitution and by-laws provide, but no person shall vote more than twenty shares in any such corporation in his own right, nor have the right to cumulate his votes. But every subscriber for stock in accordance with the constitution of the association, may vote the amount of stock so subscribed for, in no event to exceed twenty shares.

"Sec. 9650. To assess and collect from members and others, such dues, fines, interest and premium on loans made, or other assessments, as may be provided for in the constitution and by-laws. Such dues, fines, premium or other assessments shall not be deemed usury, although in excess of the legal rate of interest.

"Sec. 9651. To permit members to withdraw all or part of their stock deposits, at such times, and upon such terms, as the constitution and by-laws provide. Any member, however, who withdraws his entire stock deposit, or whose stock has matured, shall be entitled to receive all dues paid in and dividends declared thereon, less all fines or other assessments and less the pro rata share of all losses, if any have occurred.

"Sec. 9652. To permit withdrawal of deposits upon such terms and conditions as the association provides except by check or draft. But no such association shall be permitted to carry for any member or depositor any demand, commercial or checking account. Nothing in this chapter shall prevent members or depositors from withdrawing funds by non-negotiable orders.

"Sec. 9653. To cancel shares and parts of shares of stock upon which the credits have been withdrawn, or upon which loans have been repaid, and reissue them as new stock."

"Sec. 9656. To borrow money, not exceeding twenty per cent. of the assets, and issue its evidence of indebtedness or other security therefor.

"Sec. 9657. To make loans to members and others on such terms, conditions and securities as may be provided by the association."

The allegations in the respective petitions which raise the question to be decided are, as to the first named plaintiff, "that plaintiff for the mutual benefit of all its members receives deposits from, and loans money to persons who are not members, said acts being duly authorized by the law of Ohio;" and, as to the second named plaintiff, "that since its organization said plaintiff has by its constitution provided that it is organized for the purpose of raising money to be loaned to its members and to others and for the purpose of receiving money on deposit from time to time to the extent necessary to meet the demand made on it by its members, depositors and others; that, since its organization, said plaintiff has by its by-laws provided for the carrying out of each of said purposes, and has, from time to time, received deposits upon which it paid to the depositors the amount of interest due thereon, in accordance with the rate and terms upon which the deposits were made; that notwithstanding the said provisions of its constitution and by-laws authorizing the same, it has not made any loans to others than

its members; and by virtue of the laws of the state of Ohio the plaintiff is, and at all times has been, authorized and empowered to make loans to persons who are not members and to receive deposits from persons who are not members and to pay interest on deposits made by such persons." The plaintiffs claim exemption from the tax under the proviso in the act. The government denies exemption on the ground, as to the first named plaintiff, that "the corporation makes loans to and receives deposits from other than members, and that accordingly in addition to its mutual features it does a business akin to a general banking business;" and, as to the second named plaintiff, that it is a corporation "organized for the purpose of raising money to be loaned to members and others, and that it is qualified to receive deposits or borrow funds from other than members," and, therefore, the government claims that these associations cannot be considered as organized and operated for the "exclusive benefit," or "exclusively for the mutual benefit," of their respective members. The government admits that the plaintiffs are domestic building and loan associations having features of mutuality between their members.

No claim is made by the government that under the Ohio laws different classes of capital stock may be issued, and for that reason there is a lack of mutuality between members, so that question may not be directly involved; but, since its discussion bears pertinently on the question to be decided here, some reference to it may be of value. It may be said that, even if the laws of Ohio empowered the directors to provide for different classes of stock, there are a number of cases to the point that the mutuality essential to such associations is not affected. Latimer v. Investment Co. (C. C.) 81 Fed. 776; Manship v. Building & Loan Ass'n (C. C.) 110 Fed. 845, 853; Wilson v. Parvin, 119 Fed. 652, 56 C. C. A. 268; People v. Preston, 140 N. Y. 549, 35 N. E. 979, 24 L. R. A. 57. The reason is that, even when the state laws do not give the power expressly, or the power is not necessarily to be inferred from them, to issue such stock, yet if there is nothing in the law to prohibit, and the issuing of such shares is for the purpose of obtaining the money which shall be used to promote the purposes of such association, such division into different classes of shares does not disturb the essential qualities of a "building association," such as that term is understood generally by the public and by legislators when enacting general laws on the subject, and a fortiori, when the power is expressly given.

While the description of associations of this kind, as set forth in some of the cases, may be accepted as correct, yet if what is done is only in furtherance of their purposes, and is not a departure from the essential principle underlying them, there would seem to be no objection to any conduct, otherwise legal, of the affairs of such associations having the same purposes in view. One such description is found in the language of Judge Minshall, in Eversmann v. Schmitt, 53 Ohio St. 174, 184, 41 N. E. 139, 141 (29 L. R. A. 184, 53 Am. St. Rep. 632):

"Mutuality is the essential principle of a building association. Its business is confined to its own members; its object being to raise a fund to be loaned among themselves, or such as may desire to avail themselves of the privilege. This is done by the payment, at stated times, of small sums, in the way of

dues, interest on loans and premiums for loans. Each shareholder, whether a borrower or nonborrower, participates alike in the earnings of the association, and alike assists in bearing the burthen of losses sustained."

It is said in Rhodes v. Missouri Sav. & Loan Co., 173 Ill. 621, 629, 50 N. E. 998, 1000 (42 L. R. A. 93):

"'A building and loan association is an organization created for the purpose of accumulating a fund by the monthly subscriptions or savings of its members, to assist them in building or purchasing for themselves dwellings or real estate, by loaning to them the requisite money from the funds of the society upon good security.' Endlich, in his work on Building Associations (section 283), speaking of the proper and legitimate purposes of the creation of such corporation, says: 'To all practical intents it may be said to be to enable a number of associates to combine and invest their savings to mutual advantage, so that, from time to time, any individual among them may receive, out of the accumulation of the pittances which each contributes periodically, a sum, by way of loan, wherewith to buy or build a house, mortgaging it to the association as security for the money borrowed, and ultimately making it absolutely his own by paying off the incumbrance out of his subscription. It is only so far as they serve these purposes and are confined to the objects necessarily involved therein that the acts of building associations fall properly within the powers granted. As soon as they transgress these limits they are ultra vires.'"

If what is done is within the power of corporations generally, and is not prohibited by law, and is in furtherance of the primary objects of building associations as understood generally and as above described, then it is not ultra vires and does not destroy the character of the building association as such.

In Wilson v Parvin, 119 Fed. 652, 658, 56 C. C. A. 268, 274, Judge Lurton says much that is pertinent to this question, and also to the claim of the government in this case that the borrowing of money from nonmembers and loaning money to them deprives of its character what would otherwise be a building association within the meaning of the proviso in the act under consideration. The claim in that case was that the issuing of prepaid shares bearing a fixed dividend payable out of the profits, with a provision that payment of principal and dividends should be secured by pledge of notes and mortgages payable to the association, the right to vote being denied the holders of such shares and the proceeds thereof being placed in a fund to be loaned to borrowing members, was beyond the powers of such association; but it was held that the issuance of such shares was in effect but a form of borrowing. Judge Lurton, after stating that the laws of Tennessee did not forbid the issuing of such shares, says:

"If, then, the issuance of preferred shares with the consent of the members of a building and loan association is an act ultra vires, it must be because it is an act offensive to the object, plan, and general scheme of such corporations, and therefore not within the implied powers of this kind of an association. It is said, in some of the cases which deal with the scheme of such associations, that such shares are inconsistent with the mutuality of such organizations by introducing the mere investor as a factor, and that the loans made by such companies to installment members would be usurious, but for the supposed mutual contribution of all to the fund thus loaned and the equal participation of all, including the borrowing members, in the contributions arising from interest, premium, dues, and fines. It is also said that the scheme of such association only contemplates the payment of members in advance out of the fund resulting from the small periodical payments

from all the shareholders alike, and that there is in fact no lending or borrowing, but that the notes taken and the mortgage given by an advanced member are only to secure the periodical payments due from him until his stock is matured and his note and mortgage thereby canceled. * * * In order to 'advance members' there must be a fund out of which they may be advanced. The slow accumulations from subscribers paying only $2 per share each month was doubtless found unsatisfactory to those it was intended to assist in the acquisition of homes by the aid of such companies. * * * The object in permitting these investment shares was plainly to assist those members of such associations who needed loans or advance to aid in procuring homes by inducing contributions from a special class of members who might be tempted by the promise of receiving as a dividend a larger return upon their money than otherwise admissible."

Directly to the point is Herold v. Park View Bldg. & Loan Ass'n (C. C. A.) 210 Fed. 577, 582, in which the Circuit Court of Appeals for the Third Circuit held that a building association which issued both prepaid and installment stock, the former being entitled to a fixed dividend payable only out of the earnings of the association, was entitled to exemption under this act on the ground that in operation there would be but a small class of privileged stockholders with rights superior to their fellows, and all would stand on a footing of substantial equality, which was all that was intended by the law; in which connection Judge McPherson said:

"Looking at the subject from as many points of view as possible, we are persuaded that Congress intended the word 'mutual' to mean 'substantially equal,' and that a building association is organized and operated for the mutual benefit of its members when they share in the profits on substantially the same footing."

But the only reason urged by counsel for the government, either in argument or in his brief, for denial to the plaintiffs the exemption they would otherwise admittedly have, is their power to borrow money from, or loan it to, others than members. He places a reliance on Pacific Bldg. & L. Ass'n v. Hartson (D. C.) 201 Fed. 1011, which does not seem to be justified. In that case, while the court found the excise tax applicable to building associations of the state of Washington and gave as one of the reasons for so holding that the associations had authority to loan funds to nonmembers, yet the judgment was also based on the provisions of the laws of that state for issuing preferred or guaranteed interest-paying stock, as well as for the retirement of any and all stock at the discretion of the directors. For these reasons the court was of opinion (1015) that the association under consideration could not be said to be—

"organized * * * exclusively for the mutual benefit of the members, no part of the net income of which inures to the benefit of any private stockholder or individual."

From this quotation it will be seen that the court tacked on to the clause in the proviso exempting domestic building associations the last clause in the proviso "no part of the net income of which inures to the benefit of any private stockholder or individual," which, upon analysis, would seem, with some degree of conclusiveness, to apply only to the clause in the proviso excepting corporations organized and operated exclusively for religious, charitable, and educational purposes, which

it immediately follows. That the last clause refers only to the kind of associations immediately preceding it is clearly shown by Judge McPherson in Herold v. Park View Bldg. & Loan Ass'n (C. C. A.) 210 Fed. 577, 578, whose reasoning on that point is adopted here. It is quite probable that if the court in the Washington Case had not considered the last clause in the proviso as applying to building associations, his conclusion would not have denied the exemption to the Washington association simply because of the power to loan money to nonmembers.

If it were permissible to look to the debates in Congress preceding the enactment of the law to ascertain the intention of Congress, it would be easy enough to discover a clear purpose to exempt such domestic corporations as are the plaintiffs. Congressional Record, 61st Congress, vol. 44, No. 91, p. 4264 et seq. But this is forbidden. United States v. Trans-Missouri Freight Association, 166 U. S. 290, 318, 17 Sup. Ct. 540, 41 L. Ed. 1007, and cases cited. Debates may, however, be resorted to, says Chief Justice White—

"as a means of ascertaining the environment at the time of the enactment of a particular law, that is, the history of the period when it was adopted." Standard Oil Co. v. United States, 221 U. S. 1, 50, 31 Sup. Ct. 502, 512 (55 L. Ed. 619, 34 L. R. A. [N. S.] 834, Ann. Cas. 1912D, 734).

From the debates it may be gathered that much fraud had been perpetrated on gullible people by irresponsible companies calling themselves building associations operating at large in the United States, a situation not likely to arise in domestic associations organized under state laws and subjected to supervision by officers expressly empowered to that end. Without laying too great stress on this, however, one may look for some light on the intention of Congress to the laws of the various states permitting the creation of building associations, for necessarily such associations are "domestic," as distinguished from "foreign" corporations. The brief of counsel for the plaintiffs pertinently summarizes the laws of 34 states conferring powers on domestic building associations which involve dealings with other than members, in many of which are found provisions for borrowing money from, and loaning money to, nonmembers. This summary is assumed to be correct.[1]

If the power to borrow and loan from and to others than members takes building associations having it out of the class entitled to ex-

---

[1] "Cal.    May borrow money. May insure the lives of its members and debtors.

"Colo.    May invest any portion of its funds not required by members, in loans on real estate or other securities. May negotiate for loans on long or short time and give note or bond therefor.

"Conn.    May borrow money. Loan surplus to other associations.

"Del.    Any person not a member may receive a loan of funds not needed by members.

"Fla.    May stipulate a rate of interest to be paid on stock. May build houses to rent or sell to persons not members.

"Ga.    May make loans to nonstockholders.

"Idaho.    May borrow money. May insure the lives of members and debtors.

"Ind.    May buy and sell or improve real estate in order to sell it to mem-

emption, then the building and loan associations of most of the states must pay the tax. Since Congress by using the adjective "domestic" necessarily had in mind associations formed under state laws, and since

| | |
|---|---|
| | bers 'or to others for the benefit of members.' May loan money to others than stockholders 'for the benefit of stockholders.' |
| "Kan. | May receive money on loan or on deposit 'for the accumulation and loan of funds for the erection of buildings and the purchase and sale of real estate for the benefit of its members.' |
| "Me. | May receive deposits; money not needed by members to be invested in securities. |
| "Mass. | Money not needed by members may be loaned to nonmembers. |
| "Mich. | May receive loans and deposits from other persons, partnerships, and corporations. May make loans to persons, partnerships, and corporations who are members, as well as those who are not members. |
| "Minn. | May issue guaranty stock or permanent stock, upon which exact dividends are guaranteed. May receive deposits and loan to non-members. |
| "Mo. | Money not needed by members may be loaned to nonmembers. |
| "Miss. | May loan to nonmembers. |
| "Mont. | May collect money from depositors. May borrow money. May make loans to nonmembers and invest money in certain bonds, etc. |
| "Nev. | May loan and invest money. May receive deposits and pay part of the earnings and part as interest to depositors. |
| "Okl. | May loan to nonmembers. |
| "N. H. | May loan money not needed by members to nonmembers upon approved securities. |
| "N. J. | May loan to borrowers upon any plan agreed upon, including straight loans, and may loan to nonmembers. |
| "N. M. | May loan money not needed by members to nonmembers. |
| "N. Y. | May borrow money. May loan to nonmembers by investing in securities. |
| "N. C. | May borrow money. |
| "N. D. | May borrow money. |
| "Ohio. | Receive deposits. May make loans to nonmembers and invest surplus in certain securities. |
| "Pa. | May build houses and lease, mortgage, or sell the same to nonmembers for the benefit and at the pleasure of the stockholders. May borrow money. |
| "R. I. | May issue guaranty stock. |
| "S. D. | May borrow money to the extent of half its assets. May make loans to nonmembers. |
| "Tenn. | May borrow money and issue notes or bonds therefor. May loan surplus money to nonmembers. |
| "Va. | 'Shall have the right to lend to stockholders and to other persons, the monies accumulated from time to time and the right to purchase land or erect houses to sell, convey, lease, or mortgage the same at their pleasure, to their stockholders or others for the benefit of their stockholders.' |
| "Wash. | 'The name "Building and Loan Association" shall include all corporations, societies, organizations and associations doing a savings and loan or investment business on the building society plan, whether mutual or otherwise.' |
| "W. Va. | May purchase land, erect houses and sell, lease, mortgage or convey the same to stockholders and others, for the benefit of the stockholders. |
| "Wis. | Same as Washington. May borrow money. |
| "Wyo. | Loans may be made to others than members, if the by-laws so provide, at not less than the legal rate of interest, to be paid monthly at the same time and place as interest on loans made to members is paid. Sec. 11 is the same as Washington." |

almost all such institutions have such powers under those laws, it may be said with some degree of certainty that Congress did not intend to deny them the exemption they otherwise would have simply because they had power to loan to persons not members, or to borrow from them.

Some light, too, is thrown on the question by a consideration of other taxing statutes. In the Income Tax Law of Aug. 27, 1894, c. 349, § 32 (28 U. S. Stat. at L. p. 556 [U. S. Comp. St. 1901, p. 2264]), exemption is given to "building and loan associations or companies which make loans only to their shareholders." And in the War Revenue Law of June 13, 1898, c. 448, § 17 (30 U. S. Stat. at L. p. 455 [U. S. Comp. St. 1901, p. 2297]), is the provision that "building and loan associations or companies that make loans only to their shareholders, shall be exempt from the tax herein provided." Whether Congress appreciated, when the Corporation Tax Law was passed, that language such as used in these laws did in them, and would in it, deprive almost all domestic building associations of the exemptions, we cannot know; but it may well be that by reason of such appreciation, the lawmakers in this act thought it best not to employ language which in its rigor would exclude the great majority of the institutions sought to be benefited by the exemption, and therefore made the test organization and operation "exclusively for the mutual benefit of their members."

There is nothing in the language of the Ohio statutes giving power to thus borrow or lend money which ex vi termini would deny to building associations in that state their essential quality. On the contrary, while it might be admitted that the plan of raising money by so borrowing would be a departure from the methods of accumulation by the small sums of members contributed weekly or monthly, yet if the ends of such associations are to provide a method by which people of small means can become the owners of a home, which otherwise they would not be able to accomplish, and that by borrowing from nonmembers funds to be made immediately available for those laudable purposes, and thus accelerate the process by which the purposes of the association are to be accomplished, such borrowing does not change the end, but only hastens its accomplishment. Nor would it seem that loaning money to nonmembers out of the funds accumulated in times of small demand (the power of borrowing is limited to 20 per cent. of the assets) would be foreign to the purposes of such associations, because at such times it would be in furtherance of the purposes of the association in that interest would be received on funds otherwise nonproductive.

The laws of Ohio carefully distinguished between banks and building associations, even to the extent of prohibiting the latter, when adopting a corporate name, to use the words "bank," "banking," or "trust," or any one or more of them in combination. Section 9644, Ohio General Code. It may be conceded that lending money is one of the chief purposes of banking, and that borrowing money is a power and practice necessarily inherent in the business. But, no doubt, a manufacturing corporation, for instance, may borrow money for use

in its business, and loan surplus funds, using the interest in its business, without becoming a banker and without engaging in the banking business.

Justice Clifford divides banks, in the commercial sense, into three kinds:

"1, of deposit; 2, of discount; 3, of circulation. All or any two of these functions may, and frequently are, exercised by the same association; but there are still banks of deposit, without authority to make discounts or issue a circulating medium." Bank v. The Collector, 3 Wall. 495, 512, 513 (18 L. Ed. 207).

Under this definition every building association is a bank, since it receives deposits, and, indeed, lends money to its members and, in most of the states, to persons not members. But they are building associations nevertheless, whose profits inure exclusively to the members themselves, and whose power and practice of borrowing money from nonmembers and lending to the same are only incidental to the main purpose for which they are formed, and are beneficial to, and in furtherance of, that purpose.

A nonmember borrowing or lending receives no benefit from the building association as such, but only the same benefit which he would receive by dealing generally with his money in the market. So he in no sense participates in the association, or in its profits. This participation is the exclusive right of each of the members, and every member receives the same benefit accruing to every other member. By this method of acquiring additional income for the association, there is no disturbance of the mutuality of interest, which is the distinguishing feature of building associations; indeed, by indulging in it the essential principle to that end underlying building associations is maintained.

That borrowing money by a building association in the furthering of the purpose of its organization does not of itself change the character of the organization, nor destroy the mutuality between the members, which is its peculiar characteristic, has been held in a number of cases.

In the case of Wilson v. Parvin, 119 Fed. 652, 659, 56 C. C. A. 268, 275 (C. C. A. 6th), before referred to, it appears that a building association under the laws of Tennessee having authority to borrow money and to issue prepaid shares of stock bearing a fixed dividend, payable out of the profits, such shares being secured by pledge of notes and mortgages payable to the association, it was held that the issuing of such shares was in effect but a form of borrowing, "the lender receiving a limited dividend in place of interest and having no further interest in the association." While in that case the preferred shares represented the transaction of borrowing from that class of members and the power to borrow from nonmembers was not involved, yet the reason of the decision (in support of which Judge Lurton cited Murray v. Scott, 9 Appeal Cases, 519, in which an association had borrowed from nonmembers) was that the power to borrow money (119 Fed. 661, 56 C. C. A. 277), "to enlarge the lending fund, and to secure such loans by a preference over all shareholders and members, was recognized as a valid power by implication, and held to be a legitimate meth-

od of carrying out the ends and objects of the association," even when no such power had been either granted or prohibited.

The Circuit Court of Appeals in the Seventh Circuit in Grommes v. Sullivan, 81 Fed. 45, 46, 26 C. C. A. 320, 321 (43 L. R. A. 419), were of opinion that building associations have "implied authority to contract debts in the legitimate transactions of the business authorized," and may even give their negotiable notes evidencing the loan.

Judge Niles in Manship v. Building Association (C. C.) 110 Fed. 845, 852, says:

> "The principal objections urged against treating the defendant association as a building and loan association seem to be that under its charter and by-. laws it is authorized to borrow money and to issue different classes of stock,. and it is specially urged that the power to borrow money and to issue guaranty and fixed maturity stock, or, in other words, stock which matures at a definite period, are inconsistent with the building and loan association plan, and that any association embodying and exercising such powers is not a building and loan association at all. I do not think that the power to borrow money and to issue different classes of stock, or the exercise of that power, deprives the defendant association of its character as a building and loan association."

And he fortifies his opinion by citations from numerous cases to which reference is here made. The reason underlying these decisions is that the power, and its exercise, is implied in the furtherance of the objects for which the association was created.

By an act of the Ohio Legislature authorizing corporations to issue preferred stock, which in effect were but certificates for loans with the option on the part of the lenders to become stockholders, it was held in the case of Burt v. Rattle, 31 Ohio St. 116, that such preferred stockholders were creditors only. The case bears on this only as illustrating the fact that the borrowing and lending nonmembers do not participate in any sense in the benefits and profits of a building association of Ohio. Judge Welch in that case, in speaking of the status of such preferred stockholders, says (129):

> "The act denies them every element and attribute of ownership or actual membership. They have no right to vote, or to take any part in the possession or control of the concern. They gain nothing by its success, and lose nothing by its failure. They have no participation in either the profits or losses. They are strangers to the company, have no interest in it, and look alone to its *promise* and its *mortgage* for remuneration."

In People v. Preston, 140 N. Y. 549, 553, 35 N. E. 979 (24 L. R. A. 57), payments of dues in advance, and the allowance of a rebate for the time of payment in advance, were justified, because instead of being contrary to the purpose of building associations, they might be promotive of their purpose.

> "If a wage earner has the money it may be wise to permit him to make the advance payments, and thus to save his money; and in this way, too, money is accumulated by the corporation more rapidly for loan to its members."

Judge Earl says in that case (140 N. Y. 554, 35 N. E. 980, 24 L. R. A. 57):

> "Money must come into the treasury of one of these corporations from the small monthly dues very slow, and members desiring to borrow the money for the purchase or improvement of homes must wait a long time before they can

be accommodated with loans from money thus contributed, but if prepayment of dues is permitted the ability of the corporation to aid its members by loans is greatly facilitated, and the main purpose of the corporation is thus promoted."

And it was held that such practice did not defeat equality and mutuality among the members of the association. If, under such circumstances as these and the other cases heretofore cited on the effect of the issuing of different classes of stock upon mutuality among members of the association, that quality is not impaired, how can it be successfully claimed that the necessary mutuality is destroyed when money is borrowed or loaned from or to persons who in no event are interested in the profits or losses of the association, but to which they sustain the relation only of creditor or debtor, as the case may be?

Without prolonging the discussion further, reference may be made to Building Association v. Cowley (Tenn. Ch. App.) 52 S. W. 312, in which the borrowing of money by building associations to be loaned to its members did not constitute the association merely a banking institution, because there was nothing in the scheme to disturb its mutuality. And to the same point is Building Association v. Heimbach, 77 Minn. 97, 79 N. W. 609. See, also, Thompson on Building Associations (2d Ed.) § 275; Endlich on Building Associations (2d Ed.) § 297.

The conclusion is that building associations under the laws of Ohio, notwithstanding their power to borrow money from or loan money to nonmembers, are "organized and operated exclusively for the mutual benefit of their members," come strictly within the proviso giving them exemption from the tax in question, cannot be required to pay it, and the plaintiffs are entitled to recover the amounts paid by them under protest.

Demurrers overruled.