HEROLD, Collector of Internal Revenue, v. PARK VIEW BUILDING &·
LOAN ASS'N.

(Circuit Court of Appeals, Third Circuit.    January 23, 1914.)

No. 1,801.

1. INTERNAL REVENUE (§ 9*)—SPECIAL EXCISE TAX ON CORPORATIONS—CON-
STRUCTION OF STATUTE—BUILDING ASSOCIATIONS.
. Tariff Act Aug. 5, 1909, c. 6, § 38, 36 Stat. 112 (U. S. Comp. St. Supp.
1911, p. 946), imposing a special excise tax or corporations, contains the
following proviso in paragraph 1: "Provided, however, that nothing in
this section contained shall apply to labor, agricultural or horticultural
organizations, or to fraternal beneficiary societies, orders, or associations
operating under the lodge system, and providing for the payment of life,
sick, accident, and other benefits to the members of such societies, orders
or associations, and dependents of such members, nor to domestic build-
ing and loan associations, organized and operated exclusively for the
mutual benefit of their members, nor to any corporation or association or-
ganized and operated exclusively for religious, charitable, or educational
purposes, no part of the net income of which inures to the benefit of any
private stockholder or individual." Held, that the final clause, "no part
of the income of which," etc., applies only to the fourth group of corpora-
tions named, i. e., religious, etc., corporations, and has no application to
building associations which are organized for the express purpose of bene-
fiting their stockholders, but that all such associations, if they come within
the terms of the proviso as to organization and operation, are exempted.
[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28;
Dec. Dig. § 9.*]

2. INTERNAL REVENUE (§ 9*)—SPECIAL EXCISE TAX ON CORPORATIONS—CON-
STRUCTION OF STATUTE—BUILDING ASSOCIATIONS.
A building association is not excluded from the right to such exemption
as not one "organized and operated exclusively for the mutual benefit of
its members" because it issues both prepaid and installment stock; the
prepaid stock being entitled to a fixed dividend, payable however only
out of earnings of the association.
[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28;
Dec. Dig. § 9.*]

In Error to the District Court of the United States for the District
of New Jersey; Charles P. Orr, Judge.

Action by the Parkview Building & Loan Association against Herman
C. H. Herold, Collector of Internal Revenue.    Judgment for plaintiff,
and defendant brings error.    Affirmed.

For opinion below, see 203 Fed. 876.

· J. Warren Davis, U. S. Atty., of Camden, N. J., and Walter H.
Bacon, 'Asst. U. S. Atty., of Bridgeton, N. J., for plaintiff in error.

Spaulding Frazer and Riker & Riker, all of Newark, N. J., for de-
fendant in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit
Judges.

J. B. McPHERSON, Circuit Judge.    The ·Park View Building &
Loan Association was taxed under section 38 of the Act of August
5, 1909, c. 6, 36 Stat. 112 (Supplement of 1911 to Revised Statutes, p.

946), and was compelled to pay $71.04, tax and penalty, for the year 1909. This suit, which seeks to recover that sum from the collector, was removed from a state court of New Jersey to the District Court, where the parties agreed upon a statement of facts. The court entered judgment for the association (203 Fed. 876, Judge Orr presiding specially) and we refer to his opinion with general approval. On two or three branches of the subject, something more may perhaps be said without extending the discussion unduly.

We do not think it necessary to rely on the rule that words imposing a tax should be clear; doubtful language being construed in favor of the citizen. There is force in the government's contention that the words in question do not impose a tax at all; that the tax is not laid by the proviso, but by the first clause of the section, which includes "every corporation," etc.; and therefore that the court is asked to construe, not language that lays a tax, but language that exempts. The government insists that a different rule should be applied in such a situation, and that a doubt must be resolved against a claim of exemption. We lay the subject aside, however, for we do not think the questions presented are doubtful enough to require the aid of either rule.

[1] Let us consider first the question Judge Orr did not decide, namely: What effect should be given to the words hereafter italicized in the proviso to the first paragraph of section 38? After imposing a special excise tax upon "every corporation, joint-stock company, or association, organized for profit and having a capital stock represented by shares," etc., the paragraph proceeds to state certain exceptions to the generality of this clause:

"Provided, however, that nothing in this section contained shall apply to labor, agricultural, or horticultural organizations, or to fraternal beneficiary societies, orders, or associations operating under the lodge system, and providing for the payment of life, sick, accident, and other benefits to the members of such societies, orders, or associations, and dependents of such members, nor to domestic building and loan associations, organized and operated exclusively for the mutual benefit of their members, nor to any corporation or association organized and operated exclusively for religious, charitable, or educational purposes, *no part of the net income of which inures to the benefit of any private stockholder or individual.*"

The government's argument on this branch of the case is based upon the contention that the words in italics qualify the whole proviso, and apply to every organization or association named therein, including a building association like the plaintiff that issues what is known as prepaid stock. (This is not preferred stock, as will appear in a few moments.) We do not agree with this position. As we construe the proviso, it excepts four groups of corporations:

"Labor, agricultural, or horticultural organizations.

"Fraternal beneficiary societies, orders, or associations operating under the lodge system, and providing for the payment of life, sick, accident, and other benefits to the members of such societies, orders, or associations, and dependents of such members.

"Domestic building and loan associations, organized and operated exclusively for the mutual benefit of their members.

"Any corporation or association organized and operated exclusively for religious, charitable, or educational purposes, no part of the net income of which inures to the benefit of any private stockholder or individual."

The character of the first three groups is well known. In none of them (as normally conducted) does the net income inure to the benefit of private stockholders or individuals, and it would have been superfluous to add that feature to the description. But there is a large and a more indeterminate class—"religious, charitable, and educational" corporations or associations—and this class contains some members whose precise character may not be altogether easy to define. For example, a church is no doubt organized and operated exclusively for religious purposes; but is this true of a camp-meeting association also? Such an association sometimes has net income that inures at least in part to the benefit of private stockholders or individuals. A hospital is usually organized and operated exclusively for charitable purposes; but there are private hospitals operated by associations, whose net income goes to the benefit of individuals. The exclusive purpose of a school is educational; but the income of many schools operated by associations is devoted to private profit. Indeed, every one acquainted with the problems of state taxation knows how often the courts have been called on to determine the scope and application of statutes exempting charitable and educational institutions from taxation; and we see no reason to doubt that Congress intended to avoid such disputes as far as possible by establishing both a positive and a negative test for the restricted membership in the fourth group. Positively (although the use of the word "exclusively" makes this test partly negative also), the test is that the corporations and associations must be organized and operated exclusively for religious, charitable, and educational purposes; and, negatively, the test is that none of such corporations and associations shall devote its net income, in whole or in part, to the benefit of any private stockholder or individual.

As pointed out in the association's brief, section 2 of the Income Tax provisions of the Act of October 3, 1913, lends force to the construction that confines the italicized clause to the fourth group. Section 2 in clause S of the Act of 1913 repeals section 38 of the Act of 1909, the reason being that an earlier clause (G) is in effect a substitute for section 38, and that Congress did not intend to impose two taxes of the same nature at the same time, one by the Act of 1913, and the other by the Act of 1909. Being a substitute, therefore, clause G also contains an excepting proviso, and this as as follows:

"Provided, however, that nothing in this section shall apply to labor, agricultural, or horticultural organizations, or to mutual savings banks not having a capital stock represented by shares, or to fraternal beneficiary societies, orders, or associations operating under the lodge system or for the exclusive benefit of the members of a fraternity itself operating under the lodge system, and providing for the payment of life, sick, accident, and other benefits to the members of such societies, orders, or associations and dependents of such members, nor to domestic building and loan associations, nor to cemetery companies, organized and operated exclusively for the mutual benefit of their members, nor to any corporation or association organized and operated exclusively for religious, charitable, scientific, or educational purposes, no part of the net income of which inures to the benefit of any private stockholder or individual, nor to business leagues, nor to chambers of commerce or boards of trade, not organized for profit or no part of the net income of which inures to the benefit of the private stockholder or individual; nor to any civic

league or organization *not organized for profit, but operated exclusively for the promotion of social welfare.*" Act Oct. 3, 1913, c. 16, 38 Stat. 172.

We think it is clear that the repeated use here made by Congress of the negative clause—"no part of the net income of which inures to the benefit of any private stockholder or individual"—throws light upon the previous use of the same clause in the Act of 1909, and strengthens the construction we have adopted. We agree that the argument is somewhat weakened by the possibility of supposing that Congress was trying to make more clear in the Act of 1913 what may have been thought obscure in the Act of 1909; and we wish to avoid even the appearance of evading this consideration. But certainly both constructions are available, and one seems as likely to be correct as the other. We believe the view we have indicated should be adopted.

But there is another reason for believing that the clause in italics could not have been intended to apply to the group of "domestic building and loan associations organized and operated exclusively for the mutual benefit of their members." And the reason is this: Such application leads to a conclusion that may fairly be described as absurd. Every building association is organized and operated for the mutual benefit of its members; this benefit is attained by profits; and profit is gained by the use of its funds—whether derived from installments, premiums, interest, or fines—supplemented by forfeitures; and by such dealing in real estate as it may be permitted or obliged to undertake. In every year of its normal operations it expects to have a net income, and of course this net income belongs, or inures, to its members. Now, while the members can hardly be described accurately as "private" stockholders (the word seems to be contrasted with some other relation to a particular association), they are certainly "individuals"; and therefore, if the right of a building association to be exempted by the proviso is to be tested by the fact that no private stockholder or individual receives any benefit from its net income, the inevitable result will follow that the proviso has no effect upon building and loan associations at all, and that no such association can be exempted. We have said that in our opinion this conclusion comes near to absurdity, and we think that result is too plain to require further discussion.

[2] But the chief contention of the government is that the association is not organized and operated exclusively for the mutual benefit of its members, and the sole support of the argument is found in the fact that the association issues prepaid stock. We repeat that this is not preferred stock. The New Jersey statute forbids the issue of such stock—namely, stock whose holders enjoy advantages greater than the holders of the common stock—while the issue of common stock that is prepaid is expressly authorized:

"No such association shall issue preferred or other than common stock, and all shareholders shall occupy the same relative status as to debts and losses of the association; but nothing herein shall forbid agreements with shareholders who pay full par or maturity value of shares in advance, whereby they may waive participation in the general profits of the association in consideration of a fixed annual profit." Act April 8, 1903 (P. L. p. 476, § 53).

The holders of the stock in question have waived their right to share with installment stock in the general profits of the association,

and they have agreed to accept in lieu thereof (but only "out of the profits of the association") 5 per cent. yearly on the amount prepaid. This is the only difference between the prepaid stock and the installment stock.  The parties have stipulated:

"* * * That the rights of the two classes of stockholders are in all respects identical except as to the participation in the profits of the association as above set forth; that the profits of the Park View Building & Loan Association during the year 1909 and subsequent thereto have been in excess of 5 per cent. per annum."

We think therefore the question may be properly stated in this form: Is the foregoing arrangement for the mutual benefit of the parties?  In our opinion the answer should be in the affirmative.

The subject of prepaid stock has been much discussed.  Several courts have declared against it, and a few Legislatures have forbidden it, but the decided weight of authority, judicial and legislative, is in its favor.  The course of the discussion is partially indicated in 4 Am. & Eng. Ency. (2d Ed.) 1030 (text and notes), and in 6 Cyc. 127 (text and notes); but a much better reference than either of these is Folk v. State Capitol, etc., Association, 214 Pa. 529, 63 Atl. 1013.  In Folk's Case, Judge Endlich, of the common pleas court of Berks county, discussed the subject elaborately and came to the conclusion (214 Pa. 535, 63 Atl. 1015) that there is authority of a very high and persuasive order for holding:

"* * * That the acceptance of prepayment of stock and the issuance thereupon of full-paid dividend-bearing stock is in no proper sense a borrowing of money; * * * that, remembering that a building association cannot successfully perform its intended functions without members who are simply investors and not borrowers, its power to aid the latter class of members, and thus the main purpose of its creation, will be promoted by attracting investing members capable of putting larger sums at the society's disposal than can be speedily gathered by means of periodical payments alone; that the allowance of a fixed dividend upon such paid-up stock out of the profits of the corporate business is a reasonable incident to its issuance, just to both classes of shareholders and not calculated to give either an undue advantage over the other; that, on the contrary, the practical effect of the concurrent issuance of both installment and full-paid stock is likely to prove beneficial to both classes of shareholders; that no essential characteristic of the building association scheme can be regarded as forbidding, and no essential purpose of it as defeated by, this device; that it is contrary to no accepted rule of policy applicable to or involved in the nature of building associations; and that (in Pennsylvania) it is not excluded by statutory provisions in terms authorizing and regulating operations on the footing of installment stock, but not clearly confining associations thereto or expressly prohibiting any other.  And it is to be noted that with this view every adjudicated case involving the point under discussion appears to be in harmony, except perhaps the one above referred to decided in North Carolina."

And the Supreme Court of Pennsylvania, in the brief opinion approving and adopting Judge Endlich's opinion, has this to say upon the subject (214 Pa. 543, 63 Atl. 1019):

"The general purpose of building associations is the accumulation of funds to be loaned to their members and to be repaid in small periodical payments. The accumulation from the payment of installments on stock is so slow as often to hamper their practical operations, and different methods have been adopted to provide funds to meet the demands of borrowing members promptly

and thus to promote the general purpose. Building associations are authorized by the Act of June 25, 1895, P. L. 303, to borrow money for temporary use when applications for loans exceed the accumulations in the treasury, and when a series of stock has matured. The issuing by these associations of full-paid stock to serve the same purpose as borrowing is an enlargement of their scope of operations not inconsistent with their original design, if properly restricted. While it has not been expressly authorized by the Legislature, there is a distinct recognition of the practice by the Act of June 22, 1897, P. L. 178, which subjects such stock to taxation. We find nothing unlawful in the issuing of full-paid stock, the dividends of which are not guaranteed but are limited in amount and payable only out of the profits, and the holders of which are entitled to no preference and have no advantage over other stockholders upon distribution in case of loss or insolvency; provided that the issue is incidental to the main business of the association and is intended to provide a fund from which loans may be made to the holders of installment stock. To this extent and for this purpose its issue is within the implied powers of such associations."

Judge Endlich is the author of a standard treatise on building associations, and in sections 461–464 of the second edition he has again considered the subject and has stated the results of the prevailing principles to be as follows:

"464. The result of the principles declared and applied in these decisions would seem to be, in the absence of any statutory provision expressly authorizing or prohibiting it: (1) That building associations may always permit prepayments of stock subscriptions to be received, with or without rebate or interest allowance in consideration of such prepayment; (2) that, in pursuance of charter provisions, such associations may issue paid-up stock with the incident of priority in distribution over installment stock; (3) that, under a like power and the right to pay dividends, they may issue paid-up stock-bearing income at any given reasonable rate per annum payable in cash out of and to the extent of the earnings of the association; an arrangement on the part of any corporation to pay interest or dividends to its shareholders, without reference to the ability of the company to pay them out of its earnings, being wholly illegal and void."

We agree with these conclusions and with the reasoning that supports them, and we see no occasion to prolong the discussion. In our opinion, the members of the Park View Building & Loan Association are mutually benefited by the issue of the prepaid stock in question, and as a consequence the association is organized and operated exclusively for such benefit. It is certain that the association regards the arrangement as mutually beneficial, for it has availed itself of the statutory permission to adopt it; and we may be sure that the keen sense of self-interest possessed by the members of such associations would scarcely tolerate an arrangement—even if the statute did not expressly forbid it—that would constitute a small class of privileged stockholders with rights superior to their fellows.

Looking at the subject from as many points of view as possible, we are persuaded that Congress intended the word "mutual" to mean "substantially equal," and that a building association is organized and operated for the mutual benefit of its members when they share in the profits on substantially the same footing. Exact equality is probably not possible, where part of the stock is prepaid, and part is installment; but an approximate equality, sufficiently close for all purposes, is certainly not beyond the reach of calculation. We have no doubt

that such a calculation is always made before the terms are adopted upon which prepaid stock is allowed to share in profits.

In brief, the Park View Building & Loan Association was "organized" exclusively for the mutual benefit of its members; the New Jersey Legislature required such benefit to be its object, and (as a means of attaining it) expressly permitted the use of prepaid stock. And the association is in fact "operated" for their mutual benefit, if we may trust the abundant and well-reasoned authority that approves of prepaid stock, and if we may rely also on the strong antecedent probability that the members would not agree to any arrangement that would disturb their substantially equal footing.

The judgment is affirmed.