Max Rosenkranz, Individually and as Trustee for Annie Rosenkranz, Respondent, *v.* Eagle Savings and Loan Company, Appellant.

First Department, December 7, 1917.

**Corporations — notice of nature, powers and purposes — action by depositor with savings and loan association to have his relation therewith dissolved and to secure his money — evidence insufficient to establish fraudulent representations by defendants.**

One who voluntarily deals with a corporation is chargeable with notice of its nature, powers and the purpose for which it is formed, and when dealing with its agents or officers is bound to know the extent of their power and authority.

Hence, where a depositor's misunderstanding of the character of a savings and loan association, and of the relation which he assumed to it when he paid in his money (if he did misunderstand) was not induced by fraudulent misrepresentations on the part of the defendant or its officers, he cannot be heard to ask that that relation be dissolved and a new one created.

Evidence, in an action by a foreigner of limited intelligence against a savings and loan association to have his relation with the defendant dissolved and his money returned to him, examined, and *held,* insufficient to establish any fraudulent representations by the defendant or its officers, and that, therefore, the complaint should be dismissed.

APPEAL by the defendant, Eagle Savings and Loan Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 14th day of February, 1917, upon the decision of the court after a trial at the New York Special Term.

*Almet Reed Latson,* for the appellant.

*Jacob Zelenko,* for the respondent.

SCOTT, J.:

The complaint asks that it be adjudged that defendant holds a sum of money as trustee for and in behalf of plaintiff, and that he have judgment for said sum of money. In effect plaintiff alleges that the relation which he assumed to defendant (unwittingly as he says) when he intrusted his money to it, be canceled, and that in lieu thereof he be placed in the category of a creditor. The plaintiff is a foreigner, apparently of limited intelligence and with but a scanty knowledge of the English language, which he is unable to read or write except that he can write his own name and those of his family.

The defendant is what is known as a savings and loan association, a non-stock, mutual corporation, recognized, regulated and provided for by the Banking Law of the State and subject to the visitation, supervision and control of the Superintendent of Banks. These institutions have been authorized by law in this State since 1851 (Laws of 1851, chap. 122), and in England for a much longer time. (See *People ex rel. Fairchild* v. *Preston,* 140 N. Y. 549.) The law relating to them is now incorporated into the Banking Law, sections 375 *et seq.* By statute the shares in such corporation are authorized to be divided into different classes, one of which, the class with which we are now concerned, being known as savings shares, and are thus described in the statute: " b. Saving shares, which shall participate in the dividends of the association, and may be credited therewith at a rate not less than sixty per centum nor more than ninety per centum of the rate of dividend apportioned and credited to instalment shares, as the by-laws shall determine, and upon which the dues shall be paid in such sums and at such times as the holder thereof may elect, until the shares reach their matured

value or are withdrawn.   There shall be no fine for nonpayment of dues nor any forfeiture of such shares." (See Banking Law [Consol. Laws, chap. 2; Laws of 1909, chap. 10], § 215, subd. b, as amd. by Laws of 1910, chap. 126; now Banking Law [Consol. Laws, chap. 2; Laws of 1914, chap. 369], § 383, subd. 2.)

The by-laws of the defendant designate the savings shares as " class B " shares and provide as follows: " Section 23. Class ' B ' Savings Shares.— The dues upon these shares shall be paid in such sums and at such times as the holders thereof shall elect until the shares reach their matured value or are withdrawn.

" These shares shall be credited with dividend from the profits of the company, January first and July first, at a rate not exceeding four per centum per annum. The holders of these shares shall not be subject to fine for non-payment of dues."

By other provisions of the by-laws holders of this class of shares may withdraw the total amount paid in with four-fifths of the dividends apportioned thereto, at any time upon giving sixty days' notice of intention to withdraw, a requirement which may be waived by the board of directors or the executive committee, and which, as the evidence in this case suggests, is ordinarily waived as a matter of course, unless for reasons it is deemed advisable to enforce it.

In July, 1912, the defendant occupied an office in Remsen street, Brooklyn. Plaintiff's attention was attracted to it, as he says, by seeing a large figure " 4 " on the window. He went inside of the hallway of the building and saw the same sign on a window of defendant's office leading off from the hallway. He entered the office and found that it was arranged, as he says, like a bank. He came to the first window and saw a man who described himself as a cashier. At the next window he found the manager. These were apparently the only officials of the defendant present. A conversation then ensued between plaintiff and the manager, and it is upon this conversation that plaintiff mainly rests his charge of fraud. Plaintiff stated, as he says, that he had about a thousand dollars which he wished to deposit in a bank where he could get it at any time. Thereupon the manager replied that for the

first thirty days he could not get it, " but after that any time you come in, you will get it.", Plaintiff then states the remainder of the conversation as follows: " Q. Is there anything else that you can remember, and if there is, you may state it. A. I asked him ' How much you pay interest?' He says, ' Don't you see on the window?' I says ' I cannot read. I see 4.' He says, ' We pay 4 per cent. interest on every dollar you have got. When you deposit your money in another bank and you draw out before July, you lose your interest, but here if you leave one dollar, and when it comes July or January, you will get credit for the interest, for the money what was left here in the bank for that time that it was in the bank.' Q. You mean up to the time you draw it provided you leave a dollar? A. If I leave something so that I have a book. So I am very glad and I make a deposit."

The only actual, verbal misrepresentation charged, and that is only inferential, is contained in the conversation last quoted wherein the manager is made to speak of " another bank." This we are asked to consider equivalent to a declaration that defendant was a " bank." We are unwilling to fasten a charge of fraudulent misrepresentation upon an apparently respectable institution upon so unsubstantial a basis as this. As to the statements that plaintiff would receive four per cent interest upon his deposits and could draw it out at any time they were true as matters stood when the statements were made, and we find in the evidence no reason for believing that the manager then knew or had reason to anticipate that subsequent events might render it impossible, as they in fact did some years afterwards, to repay plaintiff his money on demand.

Having made his deposit plaintiff signed an identification card, and received a pass book. On the card plaintiff was described as the holder of thirty class B shares, that number apparently having been attributed to him arbitrarily by the manager. Thereafter plaintiff made further deposits, and some withdrawals, being credited at six monthly intervals with interest, or " dividends," as they were denominated, at the rate of four per cent per annum.

It is further charged against the defendant as part of the fraudulent representations complained of that its office arrange-

ment was similar to that of a bank, and that the pass book issued to plaintiff was similar to those customarily issued by savings banks. But it is not pointed out, and we are unable to discern, how the defendant acted unlawfully, or made a false representation in either of these particulars.

The plaintiff claims, and this is probably true, that he did not understand the nature of the institution with which he was depositing his money, but supposed that he was making a deposit in an ordinary savings bank. But the fact that he thus misunderstood is not sufficient to justify his present complaint. One who voluntarily deals with a corporation is chargeable with notice of its nature, powers and the purpose for which it is formed, and when dealing with its agents or officers is bound to know the extent of their power and authority. (*Jemison* v. *C. S. Bank*, 122 N. Y. 135, 140.)

Unless, therefore, the plaintiff's misunderstanding of defendant's character, and of the relation which he assumed to it when he paid in his money (if he did misunderstand), was induced by some fraudulent misrepresentation on the part of defendant or its officers, he cannot be heard to ask that that relation be dissolved and a new one created.

We can find no credible evidence of such misrepresentation. In fact the manager testifies, and he is not contradicted, that he explained the nature of the relation which plaintiff would assume to the institution if he made a deposit, although he expresses a doubt whether or not plaintiff fully understood the explanation. Finally the relation which plaintiff assumed as an investor in class B savings shares was in all substantial particulars that which a depositor in an ordinary savings bank assumes to the bank. He paid in money as and when he chose. He was credited with interest regularly at a fixed rate. He could draw it out at will subject to the condition that if required he must give notice of his intention to withdraw, a provision that is found in all savings bank rules. If the defendant became unable, through misfortune, to repay all depositors in full, plaintiff ran the risk of having his deposit reduced ratably with others in like position with himself, a risk which he would equally have to bear if he had deposited in a savings bank which became insolvent, or unable to pay its depositors in full. In short to all intents

and purposes the relation which defendant assumed to plaintiff was that of a savings bank. That the deposits were called " dues," the withdrawals " loans," and the interest " dividends " does not change in any essential way the actual relations of the parties.

Upon the whole case we are clearly of the opinion that no fraud or fraudulent misrepresentation on defendant's part was shown and that no basis was established for the judgment which plaintiff secured. It follows that the judgment appealed from must be reversed and the complaint dismissed, with costs to appellant in this court and the court below. The order may be settled on notice when the findings to be reversed and the new findings to be made will be determined.

CLARKE, P. J., SMITH, PAGE and SHEARN, JJ., concurred.

Judgment reversed, with costs, and complaint dismissed, with costs. Order to be settled on notice.